Squires Unemployment Compensation Case.

Argued November 12, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*James Craig Kuhn, Jr.,* with him *Arnold D. Wilner* and *Wilner, Wilner & Kuhn,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Robert E. Woodside,* Attorney General, for Unemployment Compensation Board of Review, appellee.

*Charles C. Hewitt,* with him *W. Gordon Rauck* and *Thorp, Reed & Armstrong,* for employer, intervenor, appellee.

OPINION BY RENO, J., January 20, 1953:

The compensation authorities denied benefits to appellant and two other claimants because they were disqualified under the Unemployment Compensation Law, §401(d), 43 P.S. §801, which provides: "Compensation

shall be payable to any employe who is or becomes unemployed and who . . . (d) Is able to work and available for suitable work;".

The Board's findings of fact are: "1. The claimant was last employed by Stackpole Carbon Company, of St. Marys, Pa., and her last day of work was July 27, 1951, when she was laid off due to lack of work. 2. On October 29, 1951, the claimant [while drawing benefits] was recalled by above employer and offered work on the two shifts starting at 7:00 A.M., until 3:00 P.M., and from 4:30 P.M., until 12:30 A.M. The claimant was unable to accept work on either of these shifts for the reasons that she had two children, aged seven and four, to care for. She was available for the shift from 11:00 P.M., until 7:00 A.M., which was the shift she worked on when laid off. 3. There was no normally existing labor market for claimant's services in St. Marys, Pa., on a shift beginning at 11:00 P.M. and ending at 7:00 A.M., the only shift on which claimant was in a position to accept employment."

Relying upon *Mooney Unemployment Compensation Case*, 162 Pa. Superior Ct. 183, 56 A. 2d 386, the Board held that appellant was not disqualified under §402(a) of the Law, since certain domestic circumstances constituted good cause for refusing the employment, and based its denial of compensation upon the ground that "the resulting restriction on the hours during which she can accept employment necessitates disqualifica· tion under Section 401(d). The absence of a normally existing labor market for claimant's services clearly results in unavailability under Section 401(d), [supra]."

Appellant's chief complaint relates to the second finding. She contends that the Board entirely disregarded her uncontradicted testimony to the effect that she was available for work and willing to work on the

7:00 a.m. to 3:00 p.m. shift. The Board did ignore that testimony, and properly so.

The testimony and the record clearly disclose that appellant was offered work on the two shifts from 7:00 a.m. to 3:00 p.m., and from 4:30 p.m. to 12:30 a.m., on October 29, 1951, and that, through her husband, she refused the offer. Accordingly, on November 27, 1951, the Bureau entered an initial determination, refusing benefits for the weeks ending November 9 and 16, 1951, she having received compensation for the week ending November 2, 1951. She appealed from the decision of the Bureau to the Referee on November 29, 1951, and then for the first time, according to the accepted evidence, stated that she could have accepted work on the 7:00 a.m.-3:00 p.m. shift. Her statement in her petition for the appeal follows: "I am only available to work 11 to 7, I cannot take the swing shift as my husband works 4 to 1 steady and I have small children. When I was laid off it was because I couldn't take swing shifts and have worked the 11 to 7 for almost three years. I could have taken 7 to 3:30 but, they would not give just the one shift steady."

"Each week of unemployment is, according to the board's construction of the statute, approved by this Court, the subject of a separate claim, whose validity is determined by a consideration of conditions existing within that week": *Burger Unemployment Compensation Case,* 168 Pa. Superior Ct. 89, 93, 77 A. 2d 737, following *Friel Unemployment Compensation Case,* 167 Pa. Superior Ct. 362, 75 A. 2d 7. That is to say, although one hesitates to draw an analogy from the common law in unemployment compensation litigation, each claim for one week of compensation is a separate cause of action. The Board's consideration was therefore necessarily limited to the conditions prevailing during the weeks of November 9th and 16th,

and during that period appellant did not signify her availability for and her willingness to accept work on the 7:00 a.m.-3:00 p.m. shift. Her testimony that she was willing to accept work on that shift reflected a decision she made after the expiration of the two weeks in question, and was irrelevant to the issue before the Board. The Board properly rejected it.

The evidence clearly shows that during the weeks involved claimant placed restrictions upon the hours for which she would accept employment, and thus disqualified herself for benefits during that period. *Pinto Unemployment Compensation Case,* 168 Pa. Superior Ct. 540, 79 A. 2d 802.

Appellant's second contention can be best stated in the words of her counsel: "As a matter of law, the Board of Review erred in finding and concluding that there was no labor market for claimant's services on a shift beginning at 11:00 P.M. and ending 7:00 A.M., since the only testimony on the point related to lay-offs of workers whose consequent unemployment the Unemployment Compensation Law was enacted to relieve." This, we understand, is an attack upon the Board's third finding.

It must be stated at once that "a matter of law" is not here involved, beyond the determination of whether the finding is supported by competent and substantial evidence. Whether or not there is a labor market for a claimant in any community is a question of fact for the Board, and we reverse the Board only when supporting testimony is lacking. And we cannot see the distinction, which appellant would have us draw, between lack of a "labor market" and want of "job opportunities". When applied to a claimant who restricts her availability for work to certain hours or conditions, either term denotes absence of the kind of work that will meet her self-imposed requirements.

The evidence clearly reveals that on September 1, 1951, Stackpole abolished its 11:00 p.m.-7:00 a.m. shift. While that shift was operated 90 to 98 women were employed on it, but afterward only 10 women were employed, and then only for short periods to handle a special Christmas rush order. Further testimony developed the fact that 95% of the labor employers in the St. Marys area had discontinued employing married women on the so-called midnight shift. This, and other evidence which need not be detailed, amply supports the third finding.

Of course this testimony demonstrates, as appellant contends, that employes had been laid off; the abolishment of night shifts would inevitably produce that result. Their "consequent unemployment [which] the Unemployment Compensation Law was enacted to relieve", to quote appellant's counsel again, was assuaged in accordance with the Law. Appellant was laid off on July 27, 1951, and thereafter she received benefits for 13 weeks at the rate of $25 a week, a total of $325. She was recalled to work, refused it, and was disqualified for benefits for 2 weeks. During that period she was not within the group of employes for whose benefit the Law was enacted; she was *not* "unemployed through no fault of [her] own": Law, §3, 43 P.S. §752. The Law did relieve her unemployment so long as she remained unemployed through no fault of her own. The provisions of the Law were meticulously observed, those which provide relief from unemployment and those which guard the Unemployment Compensation Fund against invalid claims.

Decisions affirmed.