ROBINSON *v.* MARYLAND EMPLOYMENT SECURITY BOARD

[No. 162, October Term, 1952.]

516

*Decided June 12, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Alexander Stark,* with whom was *Bernhard Cline* on the brief, for the appellant.

*James N. Phillips,* with whom were *Edward D. E. Rollins, Attorney General,* and *Aaron A. Baer, Special Assistant Attorney General,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Grace E. Robinson appeals from an order of the Superior Court of Baltimore City, which, pursuant to the

directions of Section 6 (h) of Article 95A of the Code (1951 Ed.), considered the record before the Maryland Employment Security Board, including its finding of fact and decision, and held that she was not available for work and therefore, justifiably was denied benefits under the Unemployment Compensation law.

The appellant worked for several years for the operator of a cafeteria from 10:45 A.M. to 3:00 P.M. five days a week. She had previously worked in the same cafeteria for another operator for sixteen years during the same hours. Having been laid off by the last employer on April 10, 1952 because of a reduction in staff, she then registered for work with the Employment Security Board. About two weeks later, she was referred to a restaurant in Glen Burnie near her home, the hours offered being from 4:00 P.M. to 1:00 A.M. She declined the referral and that same day filed an original claim for benefits for total unemployment. She was indefinitely suspended by the Claims Examiner as not available for work under Section 4 (c) of Article 95A of the Code (1951 Ed.). She appealed and a hearing was held before the Referee, at which she appeared and testified. The Referee's findings of fact included the matters which have been recited, as well as a finding from the claimant's own testimony that she was available only for part time work and would be able to accept this type in her immediate vicinity. The Referee agreed that the appellant was justified in refusing, for good cause, the referral to the Glen Burnie restaurant, (lack of transportation requiring her to walk home late at night), but found that: ". . . It is a condition of eligibility for benefits that the claimant be a part of the general labor market, and available for full time employment. As the evidence shows claimant, because of her domestic situation is restricting her acceptance of employment to part time work only, and therefore, cannot be held to be generally available." For these reasons the Referee sustained the determination of the Claims Examiner that the appellant was unavailable for work and the indefinite

suspension was sustained. The Employment Security Board refused to review the decision of the Referee, which thus became final, and Mrs. Robinson appealed to the Superior Court.

At the argument here, both sides were in agreement that the appellant would accept only part time employment and that the hours she would be willing to work were approximately those which she had customarily worked, that is to say, from about 11:00 A.M. to 3:00 P.M. This being so, we think the question to be decided is essentially one of law and is whether one who restricts the hours during which she is willing to work, can be considered available for work within the meaning of the statute.

The Unemployment Compensation law, codified in Article 95A of the Code (1951 Ed.), in its declaration of policy found in Section 2, says: "Involuntary unemployment is therefor a subject of general interest and concern which requires appropriate action by the Legislature. . . The achievement of social security requires protection against this greatest hazard of our economic life. . . The Legislature, therefor, declares that in its considered judgment the public good, and the general welfare . . . require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Section 4 of Article 95A says: "An unemployed individual shall be eligible to receive benefits with respect to any week only if the Board finds that—. . . (c) He is able to work, and is available for work; . . ."

We must decide whether the general purpose and intent of the statute, as declared by the Legislature, focused on a particular factual situation by the specific language of an applicable section, permits a holding that one who will accept work only for substantially fewer hours per day than the customary number of working hours, and then only at the time of the day chosen by her, "is avail-

able for work . . ." and so entitled to benefits if she cannot secure work.

The cases hold generally—we have found no case to the contrary where the hours or the time of day when the claimant would work have been restricted by him— that a claimant may not impose conditions and limitations on his willingness to work and still be "available" as the statute requires. The question has presented itself in the various jurisdictions in different aspects— willingness to work only on certain days (or not on certain days), only at certain hours, only on certain shifts, or only if certain conditions, unusual in the trade or occupation are met—but the same answer has been given in each case.

In *Unemployment Compensation Commission v. Tomko*, 192 Va. 463, 65 S. E. 2d 524, 527, 25 A. L. R. 2d 1071, coal miners, at the request of their Union, determined to work only three days a week, with the same wages, hours and conditions under which they had formerly worked five days a week. The Unemployment Compensation Commission of Virginia denied some one thousand unemployed miners benefits, on the grounds that they were willing to accept work for only a restricted three day week, instead of the full and customary number of days, and hence were not available for work. The Court said: "As used in the statute, the words 'available for work' imply that in order that an unemployed individual may be 'eligible to receive benefits' he must be willing to accept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual and customary in that occupation but which he may desire because of his particular needs or circumstances. . . . The courts have universally held that a claimant who undertakes to limit or restrict his willingness to work to certain hours, types of work, or conditions, not usual and customary in the trade, is not 'available for work'."

In *Ford Motor Company v. Unemployment Compensation Commission*, 316 Mich. 468, 25 N. W. 2d 586, it was

held that the claimant who restricted her availability to the afternoon shift so that she might care for her two children earlier in the day, was not available for work.

In *Corrado v. Director of the Division of Employment Security*, 325 Mass. 711, 92 N. E. 2d 379, 380, a stenographer who worked for a lawyer, was referred to a position, where there would be nine or ten clerical employees working in the office with her. She declared that she would work in an office with two or three people but not in one with nine or ten. The Supreme Judicial Court said: "Unemployment benefits are not for those who would be engaged in suitable employment if they were willing to work rather than to remain idle. . . . There was evidence that the claimant had placed a restriction on her availability to the point where it could not be considered that she was available for employment under the meaning of the law."

For similar holdings, see *Jacobs v. Office of Unemployment Compensation and Placement*, 27 Wash. 2d 641, 179 Pac. 2d 707, where the claimant would accept day work and not night work; *Goings v. Riley*, N. H., 95 A. 2d 137, where claimant would work first but not second or third shift; *Judson Mills v. South Carolina Unemployment Comp. Commission*, 204 S. C. 37, 28 S. E. 2d 535, also a shift case; *Keen v. Texas Unemployment Comp. Commission*, Tex. Civ. App., 148 S. W. 2d 211, where a student would not work between 9:00 A.M. and 1:00 P.M.; *Kut v. Albers Super Markets, Inc.*, 146 O. St. 522, 66 N. E. 2d 643, claimant would not work on Saturday; and *Leclerc v. Administrator, Unemployment Comp. Act*, 137 Conn. 438, 78 A. 2d 550, 551. In this *Connecticut* case the woman was available only from 3:30 P.M. to midnight. The Court said: "She thus refused to expose herself unequivocally to the labor market. She made herself availabe for work upon a restricted and contingent basis only, subject to the conditions and limitations which she prescribed. . ." The Court added later: "The Superior Court has repeatedly ruled that a claimant who limits his availability

for work because of personal reasons unrelated to the employment is not entitled to compensation. . . This constitutes a reasonable and sound interpretation of the act and is sustained by decisions in other jurisdictions."

The appellant, in support of her position, relies on two cases—one in New York and one in New Jersey. In each, the claimant was a woman who had always worked at home. The claimant in each case refused a factory job, claiming her home conditions restricted her from working in any manner other than that which she had enjoyed in the past. In each case, the claimant was held to be available for work and entitled to benefits. The New York case is *Smith v. Murphy,* 267 App. Div. 468, 46 N. Y. S. 2d 774, and the New Jersey case is *Valenti v. Board of Review,* 4 N. J. Super. 162, 66 A. 2d 565. In the *Smith* case, decided by the Appellate Division of the Supreme Court, no authority is cited to sustain the result and the basis of the decision was apparently that the Industrial Commissioner, by reason of the requirements of New York law, had refused to permit her to work at home and thus compelled her to remain unemployed.

The *Valenti* case, relied on by the appellant, was decided by the Appellate Division of the Superior Court of New Jersey. However, it was reversed by the Supreme Court of that State—see *Valenti v. Board of Review of Unemployment Compensation Commission,* 4 N. J. 287, 72 A. 2d 516, 518. The Supreme Court said: "The construction of specific terms must be consistent with the general purpose the law was designed to achieve. The provisions relating to eligibility and disqualification are to be interpreted in the light of the statutory concept of social insurance against the hazards of involuntary unemployment, by compensation to the unemployed for the consequent wage loss. The unemployment is not involuntary in the legislative sense where the workman is unable to work or is unavailable for work. The latter element necessarily embraces the former. These are

general terms which are made specific by the context. The statutory category comprises workers able to work and available for work in a labor market that for the time being offers no employment opportunities. Such is not the case before us."

We think that in the case before us, the Employment Security Board was justified in deciding that the claimant was not available for work within the meaning of the statute. The purpose the law is designed to achieve, of protection against involuntary unemployment, is not frustrated by an interpretation that one who will work from 11:00 A.M. to 3:00 P.M. only has restricted her utility and desirability in the labor market to a point where she cannot be held to be "available" as that word is used in the context of the statute. The Employment Security Board and the Lower Court were correct in their decisions.

*Order affirmed, with costs.*