In the Matter of IMOGENE R. MILLER, Claimant, Rt. 1, Box 76, ROCK-WELL, NORTH CAROLINA, S. S. No. 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, and CANNON MILLS COMPANY, KANNAPOLIS, NORTH CAROLINA, and EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RALEIGH, N. C.

(Filed 3 February, 1956.)

**1. Statutes § 5d—**

Statutes dealing with the same subject matter must be construed together and harmonized so as to give effect to all the provisions of each, if this can be done by any fair and reasonable construction, there being a presumption against inconsistency.

**2. Master and Servant § 60—**

Construing G.S. 96-13 and G.S. 96-14 together to harmonize and give effect to all of the provisions of each, it *is held* that the words "available for work" as used in G.S. 96-13 mean "available for suitable work" in the same sense as the words "suitable work" are used in G.S. 96-14.

**3. Same—**

A textile worker whose religious faith impels her to regard the period from sundown Friday until sundown Saturday as the true Sabbath, and who therefore seeks only such employment as would not require her to do secular work during this period, *held* not unavailable for work within the purview of G.S. 96-13, properly construed, since her refusal to engage in work which would offend her moral conscience would not render her unavailable for suitable work.

Barnhill, C. J., dissents.

Appeal by claimant from *Armstrong, J.,* at May, 1955, Mixed Term of Rowan.

Proceeding to determine validity of claim for unemployment compensation filed with the Employment Security Commission of North Carolina by Imogene R. Miller, a former employee of Cannon Mills, Inc., Salisbury, North Carolina.

These in material part are the facts found by the Employment Security Commission:

"1. The claimant filed for benefits on June 4, 1954, and continued this claim through August 19, 1954, . . . Prior to filing her claim the claimant worked last for Cannon Mills Company as a spinner. She worked for this employer approximately thirteen years.

"2. That in addition to working as a spinner claimant has worked as a sweeper and has brushed rails and picked rollers. She has worked only in the textile industry and does not have any special skill or training for any other particular type of work.

"3. During the time claimant worked with her last employer she worked on third shift and during the last period of her employment she was working third shift. Sometime previous to May 28, 1954 the claimant became interested in the creed and religious teachings of the Seventh Day Adventist Church and as a result became convinced that she should not work on the Sabbath as understood by this denomination, it being from sundown Friday until sundown on Saturday. On the Friday before May 28, 1954 the claimant asked permission to be off from her job from the employer and was granted this request. On Friday, May 28, 1954 the claimant remained away from her job without the permission of the employer. Upon returning to work on the following Monday she was discharged by the employer.

"4. The claimant has been able to work since filing her claim on June 4, 1954 and has sought work with various textile mills in the area and has sought first shift work only with a number of these employers. She has made reapplication for employment with her last employer on the first shift. . . . Approximately 95% of all job openings in textile plants in the textile plants in the area are for third shift workers. (note: The evidence discloses that the three shifts as a rule run from seven in the morning until three in the afternoon; from three in the afternoon until eleven at night; and from eleven at night until seven the next morning.)

"5. There are a number of people who have the same religious belief and creed respecting the observance of the Sabbath from Friday sundown until Saturday sundown as the claimant and there are approximately forty-five people in the Salisbury area that are members of the Seventh Day Adventist Church that work in the textile industry. There are others of the same belief who work in Albemarle, High Point and

In re Miller.

elsewhere. Some of the employers arranged to let such individuals off on their Sabbath. Others of these individuals worked first shift."

Upon the foregoing facts found, the Commission elaborated and concluded in pertinent part as follows:

1. "Under the Employment Security Law of North Carolina an individual who is discharged for misconduct in connection with his work is subject" to a disqualification penalty.

2. "In the present case the claimant who believed it would violate the teachings of the Bible to work during the period from sundown Friday to sundown Saturday remained away from her job on the third shift on Friday, May 28, 1954. When she returned to her work on the following Monday she was discharged by the employer. She did not have any previous record of unexplained absences from her work and insofar as the record discloses she had not remained away from her job previously without permission of the employer. Under such circumstances the claimant was discharged but not discharged for misconduct in connection with her work and no penalty should be inflicted against her on account of her separation from her last employment."

3. "The Employment Security Law requires that each individual who files a claim for benefits must meet certain eligibility conditions of the law. These conditions apply uniformly to all individuals who file claims. The law requires that in order to be entitled to receive benefits during any week of unemployment that the individual must be available for work and in addition must be able to work and actively seeking work in addition to registering for work at the office of the Employment Security Commission."

4. "Here the claimant has been able to work and has made an active and reasonable search for employment but the question remains as to whether she has been available for work. She sought work with numerous employers and restricted her services with some of these employments to first shift only and she freely admits that she would not take any work which would require her to work during any time from sundown Friday to sundown Saturday night. This means, of course, that she would not be able to take work in any textile plant or other industry on either second or third shift if she was required to work on Friday nights for the employer. The evidence shows that it is customary for the textile plants in the area to run five days a week and that this is the normal work week, from Monday through Friday night, and in addition it is disclosed by the evidence that the textile mills in the area customarily hire new employees for third and second shift work and promote such individuals to first shift in accordance with the length of time that the individual has worked for the employer."

5. "In this case the claimant is experienced only as a textile worker and it is logical that she would be more likely to find work in that field than any other particularly in view of the fact that she is approximately 56 years old. She, however, has restricted her services to what amounts to first shift work by refusing to work on Friday from sundown until sundown on Saturdays. It is true the evidence shows that there are some employers who have made exceptions to individuals similarly situated as the claimant and have arranged the work of such individuals so that they do not have to work these hours. This appears to be the exception rather than the general custom of the industry. The claimant by restricting her services as stated has so limited the circumstances under which she would accept work as substantially to eliminate herself from consideration for potential job opportunities and she is, therefore, considered unavailable for work."

Upon the facts found and the conclusions made, the Commission held that the claimant was ineligible for compensation benefits. On appeal to the Superior Court, the order of the Commission was affirmed.

The claimant appeals to this Court.

*Whitlock, Dockery, Ruff & Perry and Lyn Bond, Jr., for Claimant, Appellant.*

*William H. Beckerdite for Cannon Mills Company, Appellee.*

*W. D. Holoman, R. B. Billings, R. B. Overton, and D. G. Ball for Employment Security Commission of North Carolina, Appellee.*

*R. Mayne Albright; Leo Pfeffer, Will Maslow and Shad Polier (of the New York Bar) for Amici Curiae. American Jewish Congress and North Carolina Association of Rabbis.*

JOHNSON, J. The question for decision is whether the claimant, who is a member of the Seventh Day Adventist Church, which teaches that the true Sabbath is from sundown Friday until sundown Saturday, and who personally entertains the sincere religious belief that it is wrong to perform secular work during these hours, is, by reason of her stated purpose not to work on Friday nights, ineligible for benefits under the Employment Security Law of North Carolina, on the ground that during the time of her unemployment she was unavailable for work.

The determination of this question involves consideration of the two sections of the Employment Security Law which prescribe the general rules of eligibility for unemployment compensation benefits. These sections are codified as G.S. 96-13 and 96-14. The first section prescribes the basic conditions which have to be met by a claimant in order to qualify for benefits; the latter section enumerates a series of disqualifications. However, as cognate statutes the two sections

provide the over-all formula governing the right to benefits. Being thus *in pari materia,* the statutes are to be construed together. *Midkiff v. Granite Corp.,* 235 N.C. 149, 69 S.E. 2d 166.

Among the provisions of G.S. 96-13 is the requirement that in order for a claimant to be eligible for benefits it must be made to appear that he is *"available for work."* (Italics added.) Among the disqualifications enumerated in G.S. 96-14 are these: (a) leaving work voluntarily "without good cause attributable to the employer"; (b) being unemployed because of discharge "for misconduct" connected with work; (c) failure "without good cause (i) to apply for available *suitable work,* when so directed by the Employment office; or (ii) to accept *suitable work* when offered him." (Italics added.) Subsection (1) of section (c) provides in part, "In determining whether or not any work is *suitable* for an individual, the Commission shall consider the degree of risk involved in his health, safety, and morals, . . ." (Italics added.)

The Commission found that the claimant was not discharged for misconduct in connection with her work and that no penalty should be inflicted against her by reason of her separation from her last employment. In short, the Commission found and concluded that she was free of any and all elements of disqualifying conduct referred to in G.S. 96-14. Decision below was rested wholly and solely on the conclusion that the claimant by eliminating herself from job opportunities on her Sabbath had thereby limited her availability for work to the extent that she was not "available for work" within the meaning of G.S. 96-13, and that as a consequence she was totally ineligible for unemployment compensation benefits.

If the phrase, "available for work," as used in G.S. 96-13, is susceptible of the interpretation applied by the Commission, the logic of the thing would seem to be that the phrase may be applied so as to disqualify, or render ineligible for benefits, the vast majority of people who are not available for work on Sunday or who do not work on any night. If this be so, then the *rationale* of the statute would seem to be that in order to be eligible for benefits a claimant must be "available for work" at any and all times, night and day, Sunday and week days alike. Moreover, the interpretation applied in the instant case appears to render the two statutes, G.S. 96-13 and 96-14, inconsistent. For example, to make a claimant eligible under G.S. 96-13 only in the event he is willing to accept work without any limitation, but to disqualify him under G.S. 96-14 only in the event he should refuse to take "suitable work," would fix it so the disqualification could never operate, since a person willing to take only "suitable" work would always be ineligible in the first instance by virtue of G.S. 96-13. "It is a fundamental rule of statutory construction that for the purpose of learning

and giving effect to the legislative intention, all statutes relating to the same subject are to be compared and so construed in reference to each other that effect may be given to all the provisions of each, if it can be done by any fair and reasonable construction." *Alexander v. Lowrance,* 182 N.C. 642, 109 S.E. 639. Moreover, there is a presumption against inconsistency, and when there are two or more statutes on the same subject, in the absence of an express repealing clause, they are to be harmonized and every part allowed significance, if it can be done by fair and reasonable interpretation. *Young v. Davis,* 182 N.C. 200, 108 S.E. 630. We conclude that the language of G.S. 96-13 does not sustain the strict interpretation applied below. The words, "available for work," as used in the statute mean "available for suitable work" in the same sense as the words, "suitable work," are used in the cognate statute, 96-14.

We do not undertake to formulate an all-embracing rule for determining in every case what constitutes being "available for suitable work" within the meaning of G.S. 96-13. The phrase is not susceptible of precise definition that will fit all fact situations. Necessarily, what constitutes availability for work within the meaning of the statute depends largely on the facts and circumstances of each case. However, we embrace the view that work which requires one to violate his moral standards is not ordinarily suitable work within the meaning of the statute. And necessarily the precepts of a religious belief to which one conscientiously and in good faith adheres is an essential part of one's moral standards. Therefore, where, as here, a person embraces a religious faith, the tenets and practices of which impel her to treat as her true Sabbath the period from sundown Friday until sundown Saturday, and to refrain from all secular work during this period, it would offend the moral conscience of such person to require her to engage in secular work during such period.

We conclude that to have forced the claimant to work on her Sabbath would have been contrary to the intent and purpose of the statute, G.S. 96-13. The claimant, by refusing to consider employment during her Sabbath, did not render herself unavailable for work within the meaning of the statute. On the facts found by the Commission, she was "available for work" within the meaning of G.S. 96-13, and is entitled to an award of compensation benefits.

We do not reach for decision the question whether the evidence supports the finding of the Commission that 95% of all job openings in textile plants in the vicinity of Salisbury are for third shift work. Nor do we reach the constitutional questions discussed in the briefs and debated upon the argument.

With us, this is a case of first impression. However, decision here reached is supported in principle by well-considered decisions from other jurisdictions, including the following which deal, as here, with claims made by Seventh Day Adventists: *Tary v. Board of Review, etc.,* 161 Ohio St. 251, 119 N.E. 2d 56; *Swenson v. Michigan Employment Security Commission,* 340 Mich. 430, 65 N.W. 2d 709. See also 81 C.J.S., Social Security and Public Welfare, Sections 201 and footnotes.

The decisions and authorities cited and relied on by the appellees are either factually distinguishable or are not considered controlling with us.

Let the judgment below be vacated and set aside, to the end that the cause may be remanded to the Employment Security Commission of North Carolina with direction that an award be made to the claimant in accord with decision here reached.

Error and remanded.

BARNHILL, C. J., dissents.