**TEXAS EMPLOYMENT COMMISSION et al., Petitioners,**

v.

**Ronald L. HAYS, a Minor, Respondent.**

**No. A–8925.**

Supreme Court of Texas.

Oct. 3, 1962.

526

Will Wilson, Atty. Gen., Austin, Sam Lane, Ernest Fortenberry, E. E. Palmer, Asst. Attys. Gen., Austin, for petitioners.

Sam Houston Clinton, Jr., Austin, for respondent.

CALVERT, Chief Justice.

Eligibility of respondent Hays for benefits under the terms of the Unemployment Compensation Act, Article 5221b–1 et seq.,[1] is the sole question presented by the appeal. He was ruled ineligible at all hearing levels of the administrative agency, but has been ruled eligible by the Court of Civil Appeals, 353 S.W.2d 924. We reverse the judgments of the Court of Civil Appeals and trial court and render judgment that the plaintiff take nothing.

The eligibility of Hays turns on whether, under a proper construction of the statute, he was "available for work" during the period for which he seeks benefits. The appeal is from a judgment of a county court at law, but this court has jurisdiction because the construction of the statute is necessary to a determination of the case. Articles 1728 and 1821.

At all times material to this decision Hays was a full-time student in McCallum High School, Austin. His regular school hours were from 8:30 a. m. to 3:30 p. m. In June 1958 he secured part-time employment with H. E. Butt Grocery Company. He remained in that employment as a grocery sacker and checker until it was terminated in the fall of 1959. He worked from 5 p. m. until 9 p. m. on school days and all day on Saturdays. When he registered with the Employment Commission he limited his availability for work to hours after school and on Saturdays. He testified on the trial that he would not have accepted full-time employment and that he would not have quit school to take a job. It is admitted that Hays had earned sufficient wage credits to be qualified for benefits and that

1. Article references are to Vernon's Annotated Texas Civil Statutes.

he was not otherwise disqualified. Thus, as stated above, the only question to be determined is whether under a proper construction of the statute he was eligible for benefits.

Eligibility under the Act is controlled by Article 5221b-2. The particular part of the Article which is pertinent to the question before us reads as follows:

"An unemployed individual shall be eligible to receive benefits with respect to any benefit period only if the Commission finds that:

"(a) * * *

"(b) * * *

"(c) * * *

"(d) He is available for work;

"(e) * * *

"(f) * * *."

■ Because of the restrictions placed by Hays on the hours he could or would work, the Commission found that he was not "available for work" as contemplated by the statute. Reversal of the decision by the Court of Civil Appeals was predicated on its holding that Hays was available for work at the same hours of his previous employment in which he had become qualified for benefits through earned wage credits. If the Commission's conclusion was correct, it is immaterial that it may have proceeded to the conclusion on an erroneous theory or may have given an unsound reason for reaching it. Railroad Commission v. Magnolia Petroleum Co., 130 Tex. 484, 109 S.W.2d 967, 970; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84.

■ Ineligibility is to be distinguished from disqualification, although the two may sometimes seem to overlap. 30 Texas Law Review 735, 740-743. Disqualifications are provided in Article 5221b-3. An applicant may meet all requirements of eligibility for benefits but be disqualified from re-

ceiving them for a stated period for any of the reasons set out in Article 5221b-3. One disqualification is that the applicant "has failed, without good cause, either to apply for available, suitable work when so directed by the Commission or to accept suitable work when offered him * * *." It is this disqualification which seems to overlap ineligibility. An applicant is ineligible for benefits when, for personal reasons, he initially lays such restrictions on his availability for suitable work as effectively to detach himself from the labor market of the community. If no such restrictions are laid initially, the applicant may later become disqualified for benefits, or continuing benefits, by refusing, for the same reasons, to apply for, when directed, or to accept suitable work. Courts have been inclined to refer to an applicant who is denied benefits in either of the two instances as not being "available for work."

The phrase, "available for work," obviously is ambiguous. It is not defined in the Unemployment Compensation Act. Any effort to define it in language covering every conceivable fact situation would require such generalities as to leave the definition less certain in meaning than the phrase itself. It is usually said to mean "willing, able, and ready to accept suitable work." See 55 Yale Law Journal 124; 30 Texas Law Review 735-740. It is also generally recognized that to be available for work an applicant "must be genuinely attached to the labor market." Ibid.

We are concerned in this case with the meaning of the phrase as related to an applicant who lays restrictions on the hours at and during which he is willing and ready to work. In its broadest sense it could be interpreted to make eligible for benefits all who are willing and ready to accept suitable work for only brief fixed periods each day, each week, each month, or at fixed irregular times. In its narrowest sense it could be interpreted to make eligible only those who are willing and ready to accept suitable work for more than eight hours each working day and at any hours

of the twenty-four hour day. Neither of those interpretations would seem to comport with the spirit of the Act or with the realities of industrial and business employment.

All of the States of the Union have Unemployment Compensation Acts. Every Act requires, in one form or another, that to be eligible for benefits an applicant be "available for work." 28 Minnesota Law Review 387, 390. In most jurisdictions where the problem has reached the courts the tendency has been toward a strict construction of the Act and thus to deny benefits to those who for personal reasons, or for reasons unrelated to the work, place restrictions on the hours at which they are ready to work.

There are a number of cases in which courts of other jurisdictions have ruled ineligible applicants who restricted their readiness to work to particular work shifts. Leclerc v. Administrator, Unemployment Compensation Act, 137 Conn. 438, 78 A.2d 550; Lukienchuk v. Administrator, Unemployment Compensation Act, 23 Conn.Sup. 85, 176 A.2d 892; Ford Motor Co. v. Michigan Unemployment Compensation Commission, 316 Mich. 468, 25 N.W.2d 586; Swanson v. Minneapolis-Honeywell Regulator Co., 240 Minn. 449, 61 N.W.2d 526; Squires v. Unemployment Compensation Board of Review, 172 Pa.Super. 424, 94 A.2d 172; Mills v. South Carolina Unemployment Compensation Commission, 204 S.C. 37, 28 S.E.2d 535; Goings v. Riley, 98 N.H. 93, 95 A.2d 137; Moore v. Commissioner of Employment Security, 197 Tenn. 444, 273 S.W. 2d 703. The applicants in most of the cited cases were women who restricted their readiness to work to a particular shift or shifts because of domestic or family responsibilities requiring that they be at home during other shifts. In each it was held that because of the restriction the applicant was not "available for work." This line of cases has been rather severely criticized as losing sight of the social objectives of the Act. See 28 Minn.Law Review 392–407. A more liberal approach to the prob-

lem of shift workers was taken in Tung-Sol Electric Inc. v. Board of Review, 35 N.J.Super. 397, 114 A.2d 285, perhaps because of a difference in the wording of the statute. The Superior Court of New Jersey held that a woman applicant was available for work even though because of domestic obligations she limited her readiness to work to a particular shift.

Courts considering the problem differ as to whether an applicant, refusing to work on Saturday because of religious beliefs, is available for work. The Ohio court held in Kut v. Albers Super Markets, 146 Ohio 522, 66 N.E.2d 643, that a claimant imposing such restrictions was not available for work, but the Michigan court in Swenson v. Michigan Employment Security Commission, 340 Mich. 430, 65 N.W.2d 709, and the North Carolina court in In Matter of Miller, 243 N.C. 509, 91 S.E.2d 241, held claimants eligible for benefits in spite of the restriction.

There are other isolated types of cases involving claimants who laid time or hour restrictions on their readiness to accept suitable work. A claimant who had been a restaurant employee for many years and who restricted his readiness to work to five hours a day, from 10:30 a. m. to 3:00 p. m. or from 12 noon to 5 p. m., was held not to be available for work. Schmahman v. Corsi, 278 App.Div. 625, 101 N.Y.S.2d 991. A claimant who had worked in an ordnance plant and who, upon moving to a small town, limited her readiness to work to a certain kind of work and to daylight hours was held not to be available for work. Hunter v. Miller, 148 Neb. 402, 27 N.W.2d 638. A claimant who had worked during daytime hours and had attended law classes during evening hours and who, because of a statutory requirement for serving as a law clerk for six months as a condition precedent to admission to the bar, restricted his readiness to work to hours which would not conflict with his clerkship, was held not available for work. Chaharyn v. Department of Employment Security, 85 R.I. 75, 125 A.2d 241. This

decision is criticized in a note in 31 Tulane Law Review 705. A claimant who was a seasonal worker in a flower nursery and restricted her readiness to work during the off season to the hours of 7 a. m. to 5 p. m. was held not available for work. Mississippi Employment Security Commission v. Blasingame, 237 Miss. 744, 116 So.2d 213.

There are but few reported cases involving claimants who were students. In Northup v. Administrator, Unemployment Compensation Act, 148 Conn. 475, 172 A.2d 390, a claimant who attended a culinary institute from 8 a. m. to 2:40 p. m., had worked from 3:30 p. m. to 11:30 p. m., and who refused suitable work which would conflict with his school hours, was held not available for work. The court said the claimant was not entitled to benefits because he had "limited his availability for work for a personal reason unrelated to his employment." Most of the court decisions dealing with student claimants are by the Superior Courts (intermediate appellate courts) of Pennsylvania. In Lovich v. Unemployment Compensation Board of Review, 189 Pa.Super. 529, 151 A.2d 647, the court held that by restricting his availability for work to hours that would not conflict with his regular schedule of classes from 8 a. m. to 2:20 p. m. a student in a teacher's college "detached himself from the labor market." To the same effect, see Bates v. Unemployment Compensation Board of Review, 191 Pa.Super. 266, 156 A.2d 589, and Collins v. Unemployment Compensation Board of Review, 191 Pa. Super. 273, 156 A.2d 593. The same result was reached in the case of a student in a technician training school whose class hours were from 8 a. m. to 2 p. m., Majoris v. Unemployment Compensation Board of Review, 192 Pa.Super. 269, 162 A.2d 86, and in the case of a student in a school of dentistry whose class hours were from 9 a. m. to 5 p. m., Baker v. Unemployment Compensation Board of Review, 193 Pa. Super. 460, 165 A.2d 103, in spite of the fact that in each case the claimant offered to adjust his class hours to permit his ac-ceptance of daytime employment. Following the cited cases as precedents, the court denied benefits to a married student, 31 years of age and the father of three children, who had been in full-time employment for twelve years during which time he had successfully completed his freshman, sophomore and junior years at the University of Pittsburgh. The claimant offered to adjust his senior class schedule to accept full-time work in the daytime or at night, at any hours, and to forego his school work altogether if necessary. One judge dissented. The majority gave little attention to the claimant's availability for work, turning the case instead upon a conclusion that the claimant's primary purpose and aim was to get an education and employment was a secondary consideration. Douty v. Unemployment Compensation Board of Review, 194 Pa.Super. 220, 166 A.2d 65. This strict trend was reversed in Wiley v. Unemployment Compensation Board of Review, 195 Pa.Super. 256, 171 A.2d 810. In that case the claimant was a married man, 28 years of age, and the father of two children. He had a record of several years of full-time employment during which time he had completed the first three years of college work at the University of Youngstown during his non-working hours. He offered to adjust his class hours during his senior year to meet any requirements of full-time employment or to drop out of college entirely. The court held that the claimant was available for work and eligible for benefits. The opinion for the court was written by the judge who dissented in Douty and a dissent was written by the author of the majority opinion in Douty. One judge wrote a concurring opinion. Of the seven-judge court, one was absent, two were dissenters and two were concurrers. The court's opinion emphasizes that the claimant did not fall into the category of the ordinary college student whose primary purpose was to obtain an education and who was available for work only conditionally or on a limited basis. It states: "The record discloses that the appellant was and

is realistically and genuinely attached to the labor market." The dissenters observed that the court "up to now has held the line against many assaults upon the fund to use it as an underwriting agency for col- lege educations," and predicted that with the line breached "before long the fund will be used to finance great numbers of college educations." The concurrers thought the facts showing availability somewhat strong- er than in Douty, that "the line is fine be- tween students who work and working- men who study," and concluded that the claimant was "a workingman going to col- lege and not a college student working." By express statutory provision students are made generally ineligible for benefits in Idaho, Illinois, Indiana, Nebraska and Ohio.

There are even fewer reported cases deal- ing with part-time workers. In Thompson v. Schraiber, 253 Minn. 46, 90 N.W.2d 915, a waitress who had worked part time during morning hours and who refused an offer to work during evening hours because of family obligations, was held not to be avail- able for work. In Robinson v. Maryland Employment Security Board, 202 Md. 515, 97 A.2d 300, a part-time cafeteria employee who for many years had worked from 10:45 a. m. to 3 p. m. and who refused em- ployment from 4 p. m. to 1 a. m. and stated she would accept only part-time work at approximately her former hours, was held not available for work.

Our somewhat extensive review of cases from other jurisdictions has not been under- taken with the view of approving the con- clusions reached. Most of the cited cases are from industrial states. Only one Texas case has been cited by the parties. A claim- ant who had voluntarily left his full-time employment to become a full-time student in the University of Texas, with classes from 9 a. m. to 1 p. m., and who was willing to ac- cept suitable work for eight hours at any time between the hours of 1 p. m. and 9 a. m., was held not available for work by the Galveston Court of Civil Appeals in Keen v. Texas Unemployment Compensation Commission, Tex.Civ.App., 148 S.W.2d 211, no writ history. We have no occasion here to approve or to disapprove that holding.

We conclude that any claimant, student or non-student, and irrespective of whether qualifying wage credits have been earned in full-time or part-time em- ployment, who, for personal reasons, lays such time or hour restrictions on his avail- ability for work as effectively to detach himself from the labor market in his com- munity, is not available for work within the meaning of Article 5221b–2. We can perceive of no logical basis for favoring those who have earned their qualifying wage credits in part-time employment over those who have earned theirs in full-time employment. The Act makes special pro- vision for benefits for *partial unemploy- ment*, but not for part-time workers. Arti- cles 5221b–1, 5221b–17. Under the test of availability here announced it will be the duty of the Commission to adjudicate each claim separately, weighing the time and hour restrictions imposed by the claimant against the demand for workers of the claimant's general type.

In this case the record discloses that while there are some jobs available in Aus- tin for part-time workers of respondent's general qualifications during after-school hours, and indeed that respondent was even- tually placed in such employment, the real labor market for workers of respondent's qualifications were full-time jobs. The re- strictions imposed by respondent detached him completely from that market. We hold that Hays was not available for work with- in the meaning of Article 5221b–2.

We are not to be understood as holding that a student can never be available for work within the meaning of the statute. However, it is difficult to envision a set of circumstances under which a student in regular attendance in elementary and sec- ondary schools can be. The general stat- ute compels attendance in those schools of children seven years but not more than sixteen years of age. Article 2892. Anoth-

er statute requires that school be taught for not less than seven hours each day. Article 2906. If a student is in regular attendance in those schools, whether or not compelled to be by statute, it seems wholly unlikely that he can be genuinely attached to the labor market.

The judgments of the Court of Civil Appeals and the County Court at Law of Travis County are reversed and judgment is here rendered that plaintiff-respondent Hays take nothing.