Affirmed as Modified and Memorandum Opinion filed June 10, 2010.



 

 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00108-CV



 

Victor Elgohary, Appellant

V.

Texas Workforce Commission,
G.A. Herrera & Co., Herrera Partners, l.P., Herrera Partners, and Gilbert
herrera, individually, Appellees

 



On Appeal from the 280th District
Court

Harris County, Texas

Trial Court Cause No. 2008-00814



 

MEMORANDUM  OPINION

Appellant Victor Elgohary challenges the trial
court’s judgment affirming the administrative ruling of the Texas Workforce
Commission (“TWC”) denying unemployment compensation benefits.  We modify the
judgment and affirm as modified. 

Background

Herrera Partners, L.P., a financial consulting
company, hired Elgohary to serve as its Director of SEC Compliance and FASB
Consulting Services in November 2006.[1] 
Elgohary’s duties included training Alex Tittel, an associate at Herrera
Partners, on all aspects of Herrera Partners’ SEC compliance service practice
and financial consulting duties.  Elgohary generally began working from his
home at 7:30 a.m. and arrived at Herrera Partners’ offices between 9:00 a.m.
and 10:00 a.m.  

Gilbert Herrera, President of Herrera Partners, sent
Elgohary an e-mail on April 13, 2007, stating that he was unsatisfied with
Tittel’s training and did not want Elgohary’s practice of working from home to
interfere with Tittel’s training.  Elgohary also attended meetings and events
at various times on behalf of Herrera Partners.  Herrera also requested that
Elgohary provide a written plan outlining Tittel’s training schedule.  

On May 8, 2007, Elgohary received an e-mail from Herrera
stating that Elgohary was required to (1) adhere to a basic schedule of working
from Herrera Partners’ office between 8:30 a.m. and 5:30 p.m.; (2) avoid
deviating from this schedule without written approval; (3) complete the
training of an associate; (4) provide client activity reports; and (5) provide
written daily activity summaries.     

On May 16, 2007, Elgohary did not report to Herrera
Partners’ office by 8:30 a.m.  Elgohary was attending a work-related meeting at
a different location at that time.  Elgohary did not request and did not
receive written approval to report to Herrera Partners’ office after 8:30 a.m.
on May 16, 2007.  Herrera fired Elgohary that day.  

Elgohary filed an application for unemployment
benefits with the TWC on July 30, 2007.  The TWC initially approved Elgohary’s
application.  Herrera Partners appealed the TWC’s initial decision, and the TWC
Appeals Tribunal reversed the initial decision; the tribunal ruled that Elgohary
was disqualified from receiving unemployment benefits pursuant to Texas Labor
Code section 207.044.  Under section 207.044, an individual is disqualified
from receiving unemployment benefits if the individual was discharged from the
individual’s last job for misconduct.  Tex. Labor Code Ann. § 207.044 (Vernon 2006).        

Elgohary filed his original petition on January 4,
2008, appealing the TWC’s ruling.  Herrera Partners, L.P., Herrera Partners,
G.A. Herrera & Co., and Gilbert Herrera filed their original answer, motion
to abate and application to compel arbitration, and request for disclosure on
February 5, 2008.  The TWC filed its original answer on February 15, 2008.  On
July 25, 2008, the trial court signed an order imposing $1,000 in sanctions on
Elgohary for discovery abuse.  

A trial de novo was conducted by the trial
court on October 20, 2008. After Elgohary rested, appellees moved for a
directed verdict, which the trial court denied.  Appellees then rested without
presenting any further evidence.  The trial court signed its judgment in favor
of appellees on October 20, 2008, and incorporated its July 25, 2008 Order
Imposing Sanctions on Plaintiff into the judgment.  Elgohary timely appealed
from the trial court’s judgment.   

Analysis

Elgohary presents five issues on appeal.  In his
first and second issues, Elgohary contends that the trial court erred by (1)
imposing discovery sanctions against him; and (2) denying his motion to compel
discovery.  In his third issue, Elgohary contends that the trial court erred in
granting appellees’ motion for directed verdict.  In his fourth and fifth
issues, Elgohary contends that the trial court erred by finding that the TWC’s
administrative ruling was supported by substantial evidence.  We first address
Elgohary’s third, fourth, and fifth issues, which focus on whether this record
contains evidence of misconduct that would foreclose his receipt of
unemployment benefits.

I.         Directed
Verdict

            In his
third issue, Elgohary argues that the trial court erred in granting
appellees’ motion for directed verdict.  The appellees moved for a directed
verdict at the close of Elgohary’s evidence.   The trial court denied
appellees’ motion for directed verdict.  After the motion was denied, appellees
rested.  The trial court then rendered judgment in favor of appellees.  Because
the trial court did not grant appellees’ motion for directed verdict, we
overrule Elgohary’s third issue.       

II.        Substantial
Evidence

            In his fourth and
fifth issues, Elgohary contends that the trial court erred in finding that the
TWC’s administrative ruling denying Elgohary unemployment compensation benefits
was supported by the evidence.  In his original appellate brief, Elgohary
frames his argument as a challenge to the legal and factual sufficiency of the
evidence.   Elgohary also filed a reply brief, in which he argues that the
TWC’s ruling is not supported by substantial evidence. 

The trial court
reviews a TWC administrative ruling de novo to determine whether there
is substantial evidence to support the TWC’s ruling.  Tex. Lab. Code Ann. § 212.202(a)
(Vernon 2006); Mercer v. Ross, 701 S.W.2d 830, 831 (Tex. 1986).  The
party challenging the decision has the burden of proof.  Mercer, 701
S.W.2d at 831.  Substantial evidence must be more than a mere scintilla, but
need not be a preponderance.  Arrellano v. Tex. Employment Comm’n, 810
S.W.2d 767, 769 (Tex. App.—San Antonio 1991, writ denied).   

Under the substantial
evidence standard of review, the TWC’s ruling carries a presumption of
validity.  Mercer, 701 S.W.2d at 831.  The evidence introduced in the
trial court must show facts in existence at the time of the TWC’s ruling to
reasonably support the decision.  Collingsworth Gen. Hosp. v. Hunnicutt,
988 S.W.2d 706, 708 (Tex. 1998).  This determination is a
question of law.  Mercer, 701 S.W.2d at 831.  The reviewing court may not set aside a TWC ruling
merely because it would reach a different conclusion.  Id.  It may do so
only if it finds that the TWC’s ruling was made “without regard to the law or
the facts and therefore was unreasonable, arbitrary, or capricious.”  Id. 


If the TWC’s ruling is
correct, it is immaterial that the TWC may have proceeded to the conclusion on
an erroneous theory or may have given an unsound reason for reaching it.  Tex.
Employment Comm’n v. Hays, 360 S.W.2d 525, 527 (Tex. 1962).  However, a
reviewing court may not sustain a TWC ruling upon a factual basis not passed
upon by the TWC.  Pub. Util. Comm’n of Tex. v. Sw. Bell Tel. Co.,
960 S.W.2d 116, 121 & n.7 (Tex. App.—Austin 1997, no pet.).  

The Texas Labor Code
provides that “[a]n individual is disqualified for benefits if the individual
was discharged for misconduct connected with the individual’s last work.”  Tex.
Labor Code Ann. § 207.044.  “Misconduct” means “mismanagement of a
position of employment by action or inaction, neglect that jeopardizes the life
or property of another, intentional wrongdoing or malfeasance, intentional violation
of a law, or violation of a policy or rule adopted to ensure the orderly work
and safety of employees.”  Id. § 201.012 (Vernon 2006).  “Mismanagement”
requires (1) intent, or (2) “such a degree of carelessness as to evidence a
disregard of the consequences, whether manifested through action or inaction.” 
Mercer, 701 S.W.2d at 831.  

The TWC Appeal Tribunal concluded as follows:

Although
the claimant may have felt he had some legitimate areas of disagreement with
the employer, he chose to resolve the disagreement by not adhering to all of
the requests made by the employer on May 8, 2007, including the request that he
report each day by 8:30 AM and have written permission to deviate from the
basic schedule.  He could have avoided the final incident by notifying the
employer in advance that he would be late on May 16, 2007, because he was going
to attend a work-related meeting.  However, he did not do so, and the employer
was left to conclude that he was late without notice or a valid excuse. . . . 
Therefore, I conclude that the claimant mismanaged his position of employment
by his action, which amounted to misconduct connected with the work.  The
determination dated July 30, 2007, that approved his claim without
disqualification under Section 207.044 of the Act, will be reversed.  

 

Elgohary asserts that he was
discharged because of a “miscommunication,” and that this “miscommunication”
cannot support the TWC’s ruling “that [Elgohary] was guilty of misconduct
through mismanagement of his position” because “[n]othing about the
miscommunication between [Elgohary] and his employer demonstrates any intent on
the part of [Elgohary] or that [Elgohary] was so careless as to demonstrate a
disregard for the consequences of a failure to communicate.”   

            We conclude that
this determination is supported by substantial evidence.  Herrera sent Elgohary
an e-mail on April 13, 2007, stating that he was dissatisfied with Tittel’s
training and did not want Elgohary’s working from home to interfere with
Tittel’s training.  Herrera also requested that Elgohary provide a written plan
outlining Tittel’s training schedule.  Herrera never received a written
training plan for Tittel.          

On May 8, 2007, Elgohary received an e-mail from
Herrera stating that Elgohary was required to adhere to a basic schedule of
working from Herrera Partners’ office between 8:30 a.m. and 5:30 p.m. and was
not to deviate from this basic schedule without written approval.  Elgohary
acknowledged receiving this e-mail.  Elgohary testified that part of his duties
under his employment contract with Herrera Partners “would include those that
were assigned by Mr. Herrera from time to time[.]”  He also testified that
Herrera has the “right” or “ability and authority” to require Elgohary to work
from the Herrera Partners’ office between 8:30 a.m. and 5:30 p.m.    

On May 16, 2007, Elgohary did not report to Herrera
Partners’ office by 8:30 a.m.  Elgohary testified that he was attending a
work-related meeting at a different location at that time.  Elgohary testified
that he did not request and did not receive written approval to report to
Herrera Partners’ office after 8:30 a.m. on May 16, 2007.  Elgohary testified
that he did not send Herrera an e-mail seeking permission to report to the
Herrera Partners’ office after 8:30 a.m. because “[he] thought it was more
appropriate to . . . have a face-to-face conversation because [he] didn’t think
that e-mail was the best way to handle it.”  Elgohary never had a face-to-face
conversation with Herrera regarding reporting to the Herrera Partners’ office
after 8:30 a.m. on May 16, 2007.  Elgohary offered no other explanation for his
failure to request written approval from Herrera.     

This is substantial evidence to support the TWC’s
denial of benefits to Elgohary.  Elgohary failed to adhere to Herrera’s request
that Elgohary work from Herrera Partners’ office between the hours of 8:30 a.m.
and 5:30 p.m. unless given written permission by Herrera to do otherwise on May
16, 2007.  Elgohary was aware of these requirements and, at a minimum, was so
“careless as to evidence a disregard for the consequences” of his failure to
comply with the requirements.  This evidence constitutes misconduct under the
Texas Labor Code.  See Tex. Labor Code
Ann. § 201.012.   Elgohary has failed to carry his burden to
establish that the TWC’s ruling was not supported by substantial evidence.  See
Mercer, 701 S.W.2d at 831.        

We overrule Elgohary’s fourth and fifth issues.

III.      Discovery
Sanctions

            Elgohary contends
in his first issue that the trial court erred in imposing monetary discovery
sanctions against him.[2] 
We review a trial court’s ruling on a motion for
sanctions under an abuse of discretion standard.  Cire v. Cummings, 134
S.W.3d 835, 838 (Tex. 2004).  A trial court abuses its discretion when its
ruling is arbitrary and unreasonable, without reference to any guiding rules
and principles.  Id. at 838-39.  In conducting our review, we are not
limited to a review of the “sufficiency of the evidence” to support the trial
court’s findings; rather, we make an independent inquiry of the entire record
to determine if the court abused its discretion by imposing the sanction.  Daniel
v. Kelley Oil Corp., 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.]
1998, pet. denied) (op. on reh’g).

Texas Rule of Civil Procedure 215.2 allows a trial court to enter “just”
sanctions for a party’s failure to comply with a discovery order or request.  Tex.
R. Civ. P. 215.2.  A sanction is “just” if (1) there is a direct nexus between
the offensive conduct, the offender, and the sanction imposed, and (2) it is
not excessive.  Spohn Hosp. v. Mayer, 104 S.W.3d 878, 882 (Tex. 2003)
(per curiam).  The sanction must be directed against the abuse and toward
remedying the prejudice caused to the innocent party, and the sanction should
be visited upon the offender.  Id.   Further, a sanction imposed for discovery abuse should be no more severe
than necessary to satisfy its legitimate purposes: (1) securing compliance with
discovery rules; (2) deterring other litigants from similar misconduct; and (3)
punishing violators.  Id.   Courts must consider whether less stringent
sanctions would fully promote compliance.  Id.

As stated in the trial court’s July 25, 2008 Order
Imposing Sanctions on Plaintiff, the trial court assessed a $1,000 sanction
against Elgohary payable to Herrera Partners, L.P., Herrera Partners, G.A.
Herrera & Co., and Gilbert Herrera for submitting “discovery requests
[that] constituted an absurd fishing expedition and/or unreasonable harassment
of the HERRERA defendants.”  This sanction was prompted by Elgohary’s request
that the “Herrera defendants”[3]
produce copies of Herrera Partners’ hard drives and other data storage
devices.         

Nothing in the record on appeal indicates how the
trial court arrived at the amount of the sanction assessed against Elgohary in
this case.  The Herrera defendants did not submit any evidence to establish the
fees and expenses they incurred as a result of Elgohary’s alleged discovery
abuse.  

If a monetary discovery sanction is not supported by
evidence in the record and the basis of calculating the amount is unknown, the sanction constitutes an
impermissible arbitrary fine.  Stromberger v.
Turley Law Firm, 251 S.W.3d 225, 226-27 (Tex. App.—Dallas 2008, no pet.).  Arbitrary
fines are not susceptible to meaningful review.  Id. at 227.  In
examining whether the trial court has abused its discretion, we must be able to
determine not only that the trial court’s decision to sanction the conduct at
issue was proper, but that the sanction the trial court chose was just.  Id.  Absent supporting
evidence or some basis for calculation, there is no way to determine whether
the amount of a monetary sanction is excessive.  Id.     

            The record does
not support the trial court’s decision to impose a $1,000 sanction.  Without
evidentiary support for the amount of the monetary sanction imposed, we have no
means to determine whether the amount of the sanction is just.  Therefore, we
conclude that the trial court abused its discretion in assessing a monetary
discovery sanction against Elgohary.  Id. at 226-27.[4]

            We sustain
Elgohary’s first issue.       

IV.      Motion to Compel

            In his second
issue, Elgohary argues that the trial court erred in denying his motion to
compel discovery.  

We review a trial court’s ruling on a motion to compel discovery for abuse
of discretion.  See Johnson v. Davis, 178 S.W.3d
230, 242 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing Cire,
134 S.W.3d at 838). Trial courts have broad discretion in
discovery matters.  Id.  An appellate court should reverse a trial
court’s ruling on a motion to compel only when the trial court acts in an
arbitrary and unreasonable manner, without reference to any guiding principles.
 See Barnett v. County of Dallas, 175 S.W.3d 919, 924 (Tex. App.—Dallas 2005,
no pet.).

Discovery requests must be reasonably tailored to
include only matters relevant to the case.  In re Alford Chevrolet-Geo,
997 S.W.2d 173, 180 (Tex. 1999).   Discovery may not be used as
a fishing expedition or to impose unreasonable discovery expenses on the
opposing party.  Id. at 181.  A trial court may limit discovery when
“the burden or expense of the proposed discovery outweighs its likely benefit,
taking into account the needs of the case, the amount in controversy, the
parties’ resources, the importance of the issues at stake in the litigation,
and the importance of the proposed discovery in resolving the issues.”  Tex. R.
Civ. P. 192.4(b).  

Elgohary sought copies of Herrera Partners’
computers’ hard drives “in an attempt to prove that some or all of the
documentation provided to the [TWC] in support of its decision was false.” 
Specifically, Elgohary asserts that Herrera fabricated two memoranda dated May
1, 2007 and May 5, 2007.[5] 
Herrera Partners, L.P., Herrera Partners, G.A. Herrera & Co., and Herrera
objected to Elgohary’s requests arguing that they were overbroad.

Given the expansive nature of Elgohary’s discovery
requests, Herrera Partners, L.P.’s, Herrera Partners’, G.A. Herrera &
Co.’s, and Herrera’s objections were not unreasonable or abusive.  We conclude
the denial of the discovery was not so arbitrary and unreasonable that it
amounts to a clear and prejudicial error of law.  See Austin v. Countrywide
Homes Loans, 261 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).
 The trial court did not abuse its discretion by denying the requested
discovery.  See Dillard Dep’t Stores, Inc. v. Hall, 909 S.W.2d 491, 492
(Tex. 1995) (per curiam).

We overrule Elgohary’s second issue.      

Conclusion

We vacate the trial court’s July 25, 2008 sanctions
order, modify the judgment to the extent the sanctions order was merged into
it, and affirm the judgment as modified.  

We have also taken Elgohary’s Motion for Rebate of
Fees filed on February 10, 2010 with this case.  In his motion, Elgohary
requests that this court “order that all fees paid to the district court, court
reporters, and Appellate court by [Elgohary] be refunded under [Texas Labor
Code section 207.007(a)(2)].”   

Elgohary did not raise this claim in the trial court. 
Therefore, we do not address it on appeal.  See Tex. R. App. P. 33.1.  

We deny Elgohary’s motion.

 

                                                                                                                                                                                                                                                

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

Panel consists of Justices Yates,
Frost, and Boyce.

 









[1]
“SEC” stands for “Securities and Exchange Commission.”  “FASB” stands for
“Financial Accounting Standards Board.”  





[2]
TWC does not address this issue in its briefing.  Herrera Partners, L.P.,
Herrera Partners, G.A. Herrera & Co., and Gilbert Herrera did not file a
brief.





[3]
The “Herrera defendants” are “Herrera Partners, L.P., Herrera Partners, G.A.
Herrera & Co., and Gilbert A. Herrera.”   





[4]
Relying on Texas
Civil Practice and Remedies Code sections 38.003 and 38.004, some of our sister
courts have held that a trial court is entitled to take judicial notice of the
usual and customary attorney’s fees awarded as discovery sanctions, and that a
rebuttable presumption exists as to the reasonableness of usual and customary
attorney’s fees.  See Trahan v. Lone Star Title Co. of El Paso, 247
S.W.3d 269, 284 (Tex. App.—El Paso 2007, pet. denied); Matelski v. Matelski,
840 S.W.2d 124 (Tex. App.—Fort Worth 1992, no writ); In re Estate of Kidd,
812 S.W.2d 356, 359 (Tex. App.—Amarillo 1991, writ denied).  Section 38.004
allows a court to take “judicial notice of the usual and customary attorney’s
fees” in “a proceeding before the court.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 38.004 (Vernon 2008).  Section 38.003 states that “the usual and
customary attorney’s fees for a claim of the type described in Section 38.001
are reasonable.  The presumption may be rebutted.”  Id. § 38.004. 
Section 38.001 sets forth the following claims for which a party may recover
reasonable attorney’s fees: (1) rendered services; (2) performed labor; (3)
furnished material; (4) freight or express overcharges; (5) lost or damaged
freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an
oral or written contract.  Id. § 38.001 (Vernon 2008).  We have
rejected this approach and held that a trial court cannot take judicial notice
of reasonable attorney’s fees recovered outside of the context of Texas Civil
Practice and Remedies Code section 38.001.  See Charette v. Fitzgerald,
213 S.W.3d 505, 514-15 (Tex. App.—Houston [14th Dist.] 2006, no pet.); London
v. London, 94 S.W.3d 139, 147-49 (Tex. App.—Houston [14th Dist.] 2002, no
pet.).      





[5]
The record does not contain memoranda dated May 1, 2007 and May 5, 2007. 
Further, there is no mention of a May 1, 2007 or May 5, 2007 memorandum in the
appellate record.  Elgohary does not specifically identify any other allegedly
fabricated documents.