Marsha MILLER, Appellant,

v.

The HOUSTON INDEPENDENT SCHOOL DISTRICT and The Texas Commissioner of Education, Appellees.

No. 01–99–01437–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 2, 2001.

Rehearing Overruled April 3, 2001.

Joseph Leo Lanza, Houston, for appellant.

Andy Ramzel, Houston, George Warner, Austin, for appellee.

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. These background facts come from the hearing examiner's fact findings that were adopted in full and from undisputed facts on which the parties rely.

2. One employed under a continuing contract may be discharged only for cause. See TEX. EDUC.CODE ANN. § 21.154(4) (Vernon 1996).

Panel consists of COHEN, JENNINGS, and DUGGAN,* JJ.

## OPINION

COHEN, Justice.

The Houston Independent School District (HISD) fired Marsha Miller because she did not go to work for three months. An independent hearing examiner recommended Miller not be terminated; the HISD school board rejected the examiner's recommendation and terminated Miller's contract; the Commissioner of Education upheld the board's decision; and the trial court affirmed the Commissioner's decision. We affirm.

### I. Background [1]

Miller had been a teacher or guidance counselor under a continuing contract [2] with HISD for 28 years, never missing work for 16 years before this dispute. In July 1997, HISD transferred Miller from Lamar High School to Stephen F. Austin High School. Miller's daughter was then experiencing severe psychological problems, including repeatedly cutting herself. At an August 13 meeting, Miller advised the Central District Superintendent, Raymond Reiner, that she could not work at Stephen F. Austin because the increased drive time there would reduce her time for and make her less able to cope with her daughter. Reiner nonetheless verbally and in writing instructed Miller to report to Stephen F. Austin. At least two other HISD representatives gave Miller the same directive.

For just under three months starting August 12, Miller did not report to Stephen F. Austin. However, she once advised its office by phone that she could not work there, and she called HISD's central office daily to report her absence. On September 10, Dr. Rod Paige, HISD's superintendent, sent Miller's attorney a letter stating, "You may want to instruct Ms. Miller to report to Austin High School. Her failure to follow the previous directive may have serious consequences. . . ." By letters dated August 21, September 25, and October 9, Stephen F. Austin's principal, Jose Trevino, ordered Miller to work or serious consequences would result; however, the hearing examiner found that HISD did not prove Miller received these.

On September 19, Miller and her attorney discussed the transfer with the HISD ombudsman, and on September 22, Miller began the official grievance process (hereinafter "the transfer protest"). Dr. Margaret Stroud heard the transfer protest on October 31, although the examiner found it should have been heard October 2. Trevino recommended firing Miller on October 17, after the date the examiner found the transfer protest should have been heard, but before it was actually heard. On November 5, Dr. Stroud upheld the transfer and ordered Miller to Stephen F. Austin. Miller complied and began work there three days later.[3]

On December 15, the board notified Miller it intended to discharge her for "repeated failure to comply with official directives and established school board policy" and "repeated and continuing neglect of duties," which her contract defined as lawful cause for discharge. *See also* Tex. Educ.Code Ann. §§ 21.156(a) (Vernon 2996). The basis was Miller's not report-

ing for work at Stephen F. Austin for three months, much of which overlapped the transfer protest. No one told Miller that she would be discharged if she did not report to Stephen F. Austin, but several HISD employees told Miller she could face disciplinary action, and Miller knew discharge was a form of disciplinary action. Miller requested a hearing on her discharge before an independent hearing examiner, John Donovan ("the discharge protest"). The examiner concluded that HISD had not shown lawful cause for discharge and recommended that Miller be reinstated without back-pay for her three-month absence. The board adopted some of the examiner's fact findings, rejected or modified others, rejected or modified some of his legal conclusions, renamed some fact findings as legal conclusions and then modified them, renamed part of his recommendation as a fact finding and accepted it, rejected the rest of his recommendation to reinstate Miller, and terminated Miller's contract. Miller appealed to the Commissioner, who upheld the board's order after modifying it slightly. The trial judge affirmed the Commissioner's order.

## II. Statutory Scheme to Contest Discharge

Before a teacher under a continuing contract can be discharged, the board must notify her in writing of the proposed discharge and the grounds for it. Tex.Educ. Code Ann. § 21.158 (Vernon 1996). The teacher may elect for a protest hearing before an independent hearing examiner. *Id.* §§ 21.159(a)-(b), 21.251–.253 (Vernon 1996). This hearing is evidentiary and resembles trial to the court. *Id.* § 21.255– .256(c)(e) (Vernon 1996) (examiner may is-

---

**3.** Miller appealed Dr. Stroud's decision to the board, which upheld it. Miller does not con-

test that result in this appeal.

sue subpoenas, administer oaths, rule on evidentiary issues, and allow depositions; rules of evidence apply; teacher may have counsel, present evidence, and cross-examine witnesses; hearing is conducted as trial without jury); *see also Gibson v. Tatum Indep. Sch. Dist.,* No. 040–R2–1099, p. 2 (Comm'r Educ.1999) (board's notification of proposed discharge is treated as pleading, to which special exceptions may be made). The examiner issues a written recommendation that contains fact findings and legal conclusions and that may include a proposal for granting relief. TEX.EDUC. CODE ANN. § 21.257(a) (Vernon 1996).

At a non-evidentiary hearing, the board then considers the examiner's recommendation. *Id.* § 21.258(a)-(b) (Vernon 1996). The board must render a decision that includes fact findings and legal conclusions and that may include a grant of relief. *Id.* § 21.259(a) (Vernon 1996). The board may adopt, reject, or change the hearing examiner's legal conclusions or relief proposal, the only requirement being to give a written reason and legal basis for each one that is changed or rejected. *Id.* § 21.259(b), (d) (Vernon 1996). In contrast, the board may reject or change the examiner's fact findings only if they are not supported by substantial evidence. *Id.* § 21.259(c) (Vernon 1996). As with legal conclusions, the board must give a written reason and legal basis for each fact finding that is changed or rejected. *Id.* § 21.259(d).

The board's decision may be appealed to the Commissioner, who, with certain exceptions not applicable here, must consider the appeal only on the record from the examiner's and board's hearings. *Id.* § 21.301(c) (Vernon 1996). If a board that terminated a teacher's continuing contract modified the examiner's fact findings, the Commissioner must accept the board's decision unless it is arbitrary, capricious, or

unlawful or the examiner's original fact findings are not supported by substantial evidence. *Id.* § 21.303(b)(2) (Vernon 1996); 19 TEX.ADMIN.CODE § 157.1071(g) (2000). The Commissioner's decision must include fact findings and legal conclusions, which may be adopted by reference from the local record. TEX.EDUC.CODE ANN. § 21.304(a) (Vernon 1996).

A court may not reverse the Commissioner's decision unless it was not supported by substantial evidence or unless its legal conclusions are erroneous. *Id.* § 21.307(f) (Vernon 1996). The court may not take new evidence. *Id.* § 21.307(e) (Vernon 1996).

### III. Standard of Review

 Miller had the burden in court to demonstrate lack of substantial evidence. *Firemen's & Policemen's Civ. Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984); *Farris v. Fort Bend Indep. Sch. Dist.,* 27 S.W.3d 307, 311 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Substantial evidence means more than a mere scintilla; thus, the evidence may preponderate against the agency's decision, yet still amount to substantial evidence. *Mireles v. Texas Dep't of Pub. Safety,* 9 S.W.3d 128, 131 (Tex.1999). The test is whether reasonable minds could have reached the same conclusion as the Commissioner. *Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988); *Farris,* 27 S.W.3d at 311. Whether substantial evidence exists to support an agency's determination is a question of law. *Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 566 (Tex. 2000).

 The Commissioner's reasoning for his decision is immaterial if his conclusion is correct. *Texas Employment Comm'n v. Hays,* 360 S.W.2d 525, 527 (Tex.1962). "Construction of a statute by

the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Dodd v. Meno,* 870 S.W.2d 4, 7 (Tex.1994). Although this statute is remedial and should be construed broadly, "we are not inclined to reverse the Commissioner's reasonable determination in an area where he possesses considerable authority and expertise." *Id.*

### IV. Discussion

#### A. HISD's Preliminary Arguments

In its first reply point, HISD argues Miller has waived review because her issues focus on whether *the board's or examiner's findings* are supported by substantial evidence, when we should apply the test only to *the Commissioner's findings.* We disagree because, however she describes it, Miller is clearly attacking the Commissioner's decision upholding her discharge and the modified fact findings and legal conclusions on which that decision rests. *See* Tex.R.App.P. 38.9 (briefing rules to be construed liberally).

On the merits, HISD claims we must look for substantial evidence supporting the Commissioner's findings that are adverse to Miller, rather than for that supporting the examiner's findings that were favorable to Miller. This is so because, HISD argues, if a board changes an examiner's fact finding to say the opposite after determining—rightly or wrongly—that substantial evidence does not support that finding, and if the Commissioner then adopts the board's new fact finding, we may then apply the substantial evidence test only to that new fact finding in the Commissioner's order. That is, we must completely ignore any contrary fact findings from lower administrative levels when reviewing the evidence. We do not agree entirely.

■ It is true that we review the Commissioner's decision. *See* Tex.Educ.Code Ann. § 21.303(b)(2). But what did the Commissioner review and what did he decide? Here, the Commissioner "adopted and incorporated for all purposes" the board's decision, "as modified herein." He had to accept the board's decision unless it was arbitrary, capricious, or unlawful *or the examiner's original fact findings* were not supported by substantial evidence. *See id.* § 21.303(b)(2); 19 Tex.Admin.Code § 157.1071(g). That is, although the Commissioner reviews the board's decision, he measures the evidence against the *examiner's* fact findings, not the board's, to see if substantial evidence supports them and thus to determine if the board erred in determining otherwise.

■ Whether substantial evidence exists is a question of law. *Davis,* 34 S.W.3d at 566. We review the Commissioner's legal conclusions to determine whether they are erroneous. Tex.Educ.Code Ann. § 21.303(b)(2) (review is for whether legal conclusions were erroneous *or* whether substantial evidence supported decision). Therefore, when we review the Commissioner's "decision," we are reviewing his legal conclusion that the board correctly found substantial evidence did not support the examiner's fact findings. *See id.* This can be done only by reviewing the examiner's fact findings. As a policy matter, we note the examiner's hearing is akin to a trial and his fact findings from that "trial" are subject to limited review. Thus, it makes sense to consider those original fact findings in determining whether the Commissioner correctly decided the case.

*Moses v. Fort Worth Independent School District,* on which HISD relies, is not to the contrary. 977 S.W.2d 851 (Tex. App.—Fort Worth 1998, no pet.). The *Moses* court was merely reciting section

21.303(b)(2)'s language. *Moses*, 977 S.W.2d at 854. The court then went on to hold that "[b]ecause there was not a complete local record [filed with the Commissioner], and specifically no testimony at all, there was not substantial evidence to support *the school board's* decision.... We hold that the Commissioner was correct in his decision to reverse the school board's decision. There is substantial evidence to support the Commissioner's conclusion that the education code creates a mandatory filing deadline,[4] that Fort Worth ISD did not meet this deadline, and that without the local record there was not substantial evidence to support *the school board's* decision." *Id.* at 855 (emphasis added). *Moses* supports our holding.

We overrule HISD's argument.

## B. Waiver

■■ In issue seven, Miller claims the Commissioner erroneously ignored unnumbered fact findings in the discussion section of the examiner's order that were supported by substantial evidence.

The pertinent part of the examiner's discussion criticized HISD because (1) its policies and procedures were not "so readily clear and established"; (2) the directives its officials gave Miller were "somewhat confusing, if not conflicting"; and (3) communication within HISD about Miller was poor. Neither the board nor the Commissioner adopted these recitations as numbered fact findings.[5] Miller waived this complaint by not raising it either at the administrative level or in the trial court. *Balkum v. Texas Dept. of Pub. Safety*, 33

S.W.3d 263, 267–68 (Tex.App.—El Paso 2000, no pet.); *Texas Dep't of Pub. Safety v. Guajardo*, 970 S.W.2d 602, 606 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Reyes v. Roma Indep. Sch. Dist.*, Docket No. 083–R2–199, p. 5 (Comm'r Educ.2000); *see also* Tex.R.App.P. 33.1.

We overrule issue seven.

## C. The Board's Alleged Addition of a Fact Finding

In issue six, Miller claims the Commissioner erred in upholding the board's modification of the examiner's recommendation. The examiner's recommendation originally read as follows:

> Based upon the above findings of fact and conclusions of law, in my capacity as hearing examiner, I recommend the reversal of HISD's decision to terminate Ms. Miller's contract and Ms. Miller be reinstated, however without pay for the period of approximately three months she did not report to work during her grievance process, unless Ms. Miller chooses to use vacation or sick pay benefits to replace wages lost during this period.

The board rejected everything but the following phrase and then adopted that phrase as a fact finding: "for the period of approximately three months, she did not report to work during her grievance process." The Commissioner adopted the board's finding.

■■■ Appellant complains only that the board had no authority to add a dispositive fact finding like this.[6] *See Davis*,

---

4. This is actually a legal conclusion, subject to an "erroneous" test, rather than to a test for "substantial evidence."

5. The board rejected the remainder of the examiner's discussion section, which defined "neglect" and then found Miller's actions did

not meet that definition. Miller does not attack that decision under this issue.

6. Miller's issue is phrased as a challenge both to the added fact finding and to the rejection of the remainder of the examiner's recommendation, but she does not discuss the latter.

34 S.W.3d at 564–65, 566 (holding board may not add fact findings to those examiner makes). A fact finding found *anywhere* in the administrative decision under review will be considered a fact finding, even if mislabeled as something else. *Gibson v. Tatum Indep. Sch. Dist.,* Docket No. 040–R2–1099, pp. 7, 8 (Comm'r Educ.1999). This phrase from the examiner's recommendation was a fact finding, wherever placed and however labeled. Therefore, we hold the board did not add a fact finding. Moreover, a board may always rely on the undisputed evidence. *Davis,* 34 S.W.3d at 565, 567. No one disputes Miller did not work for almost three months. Therefore, the board could rely on this fact to support its conclusion that good cause existed to discharge Miller. *See id.*

Accordingly, we overrule issue six.

### D. Substantial Evidence to Support Certain Numbered Fact Findings

In issues one through five, Miller argues the Commissioner erred in upholding the board's rejection or modification of five of the examiner's fact findings for lack of substantial evidence.

#### 1. The Examiner's Fact Finding 52

■ In issue five, Miller claims the Commissioner erred in upholding the board's rejection of the examiner's fact finding 52:

> Ms. Miller relied upon the instructions and directions of the representatives of HISD in filing her grievance and attempting to alleviate the difficulty in having to travel the extra time to Austin High School.

Accordingly, she has waived review of the latter challenge. *See* TEX.R.APP.P. 38.1(h); *Lane Bank Equip. Co. v. Smith S. Equip. Co.,* 981 S.W.2d 302, 305 (Tex.App.—Houston [1st Dist.] 1998), *aff'd on other grounds,* 10 S.W.3d 308 (2000). Moreover, the only requirement

To the extent this finding means Miller relied on HISD representatives' instructions in filing and prosecuting *the transfer protest,* we hold that it is irrelevant and its rejection, even if error, is harmless. *See* TEX.R.APP.P. 33.1. To the extent this finding means Miller relied on HISD representatives' instructions that she could stay home pending the transfer protest's resolution, we hold the Commissioner correctly determined that substantial evidence does not support it.

Miller's teaching contract required her to work as assigned and defined good cause for discharge as the grounds alleged by HISD here. Several HISD representatives undisputedly told Miller to report to Stephen F. Austin. Miller admitted without contradiction that no one at HISD *ever* told her that the transfer protest relieved her of reporting to Stephen F. Austin. Reiner also testified without contradiction that he never told Miller this. This is conclusive evidence that Miller did *not* rely on any HISD representative's "instructions and directions" to stay at home during this time.

Accordingly, we hold the Commissioner correctly upheld the board's determination that fact finding 52 lacked substantial evidence.

We overrule issue five.

#### 2. The Examiner's Fact Finding 10

In issue one, Miller claims the Commissioner erred in upholding the board's rulings on the examiner's fact finding 10, which read, "It is also possible for an employee to be assigned to their [sic]

for a school board to reject a hearing examiner's recommendation is to give a written reason and legal basis. TEX.EDUC.CODE ANN. § 21.259(b), (d) (Vernon 1996). The board did so.

home while undergoing the Grievance Process." The board made two alternative rulings: it (1) rejected this fact finding as not supported by substantial evidence and, alternatively, (2) redesignated the finding as a legal conclusion that the board then changed to read, "An employee may not be reassigned to his or her home pending the outcome of a dispute under the Dispute Resolution Process." The Commissioner upheld the board's rejection of this fact finding on the ground that it was not supported by substantial evidence.

Whether it is one of law or fact, this finding is merely one regarding HISD's general policy. It has nothing to do with whether *Miller* was ever assigned to her home, and the evidence conclusively establishes she was not. Therefore, this change did not harm Miller.

We overrule issue one.

### 3. The Examiner's Fact Finding 48

■ In issue four, Miller claims the Commissioner erred in upholding the board's modification of the examiner's fact finding 48, which had read, "Ms. Miller substantially performed under the Grievance Process and complied with the instructions or directives give [sic] as set forth in Dr. Paige's September 10, 1997 letter." The board changed the finding to read, "Ms. Miller substantially performed under the Grievance Process but failed to comply with the instructions or directives given as set forth in Dr. Paige's September 10, 1997 letter." Dr. Paige's letter read in pertinent part as follows, "At this time, you may want to instruct Ms. Miller to report to Austin High School. Her failure to follow the previous directive may have serious consequences. If Ms. Miller is concerned about the assignment, she should follow the district policy for dispute resolution. Please contact the office of Professional Standards at 713–892–7324 for procedural information."

To the extent this finding's original wording meant Miller followed Dr. Paige's suggestion to pursue *the transfer protest*, we hold it is irrelevant and its modification is thus harmless. *See* TEX.R.APP.P. 33.1. To the extent the original wording meant Miller complied with Dr. Paige's directive to report to Stephen F. Austin during the transfer protest, we hold the Commissioner correctly determined that substantial evidence does not support it. The evidence conclusively establishes Miller did not report to Stephen F. Austin for another two months after this letter.

We overrule issue four.

### 4. The Remaining Disputed Fact Findings

The changes made to the remaining fact findings Miller challenges in issues two and three are irrelevant because they do not concern the reason Miller was discharged; rather, they concern only the instigation of the transfer protest. Moreover, any error was harmless because (1) it was undisputed Miller did not report to work for three months and (2) this is the sole reason she was discharged.

We overrule issues two and three.

### E. Fact Findings Redesignated as Legal Conclusions

■ In issue 10, Miller claims the Commissioner erroneously upheld the board's redesignation of the following fact finding as a legal conclusion:

> In the event that an employee is dissatisfied with the decision of the immediate supervisor (Level I), the employee may appeal to the next vertical line supervisor in a Level II hearing which is required to be held within ten (10) days.

After deeming this finding a legal conclusion, the board modified it as follows:

In the event that an employee is dissatisfied with the decision of the immediate supervisor (Level I), the employee may appeal to the next vertical line supervisor in a Level II hearing which is [sic] should be held within ten (10) days. If the Level II conference is not held within the allotted timeline the employee may immediately appeal the concern/dispute to the next level.

The Commissioner upheld both the redesignation and the modification.

We hold any error was harmless. The only way this finding could be material is in support of Miller's argument that, had the Level II hearing before Dr. Stroud been held within 10 days, as Miller claims this HISD procedure requires, Dr. Stroud would have ordered Miller to work, and Miller would have reported to work, before the date Principal Trevino recommended Miller's termination. However, this does not change the undisputed fact that Miller did not report to work for 51 days *before* the date she claims Dr. Stroud should have heard the transfer protest. That is, the board's change to this finding does not affect these 51 days Miller was absent. Therefore, any error had no effect on the Commissioner's conclusion to uphold Miller's discharge.

Accordingly, we overrule issue 10.

In issue eleven, Miller claims the Commissioner erroneously upheld the board's redesignation of the following fact finding as a legal conclusion, which the board then rejected:

There is no written policy instruction or direction within the HISD Grievance Process that states that an employee must have to physically report for work while grieving an involuntary transfer during the Grievance Process.

The Commissioner upheld the board's decision.

Whether it is one of law or fact, this finding is merely one regarding HISD's general policy. It has nothing to do with whether *Miller* was ordered to work pending her grievance, and the undisputed evidence conclusively establishes Miller was ordered to work and that no one ever assigned her to her home then. Therefore, this change, if error, was harmless. *See* Tex.R.App.P. 33.1.

Accordingly, we overrule issue 11.

### F. Changes to the Examiner's Legal Conclusions

█ In issues eight and nine, Miller claims the Commissioner erred in upholding the board's rejection or modification of the examiner's legal conclusions two and three. Each conclusion had stated that HISD failed to prove lawful cause for discharge (the board changed one conclusion to state that HISD had proved this). The Commissioner determined these conclusions were actually ultimate fact findings, to be measured under the substantial evidence test.[7] He then upheld their rejection or modification because, under the board's amended fact findings that the Commissioner had already upheld, substantial evidence did not support the examiner's original findings. The Commissioner ultimately ruled that Miller's failure to report to work for three months constituted good cause for termination and that her discharge was thus not arbitrary, capricious, or unlawful.

---

**7.** *See, e.g., Ball v. Kerrville Indep. Sch. Dist.,* 504 S.W.2d 791, 798 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.) (holding whether good cause exists for terminating teacher's contract is a fact finding); *accord Gibson v. Tatum Indep. Sch. Dist.,* No. 040–R2–1099, p. 8 (Comm'r Educ.1999) (same).

Miller first complains of the board's reviewing conclusions two and three de novo instead of for substantial evidence because they were ultimate fact findings, not legal conclusions. However, the Commissioner agreed with Miller on this. Thus, the complaint is moot. Miller next argues that the Commissioner erred in concluding substantial evidence did not support these ultimate fact findings. Given that we have already upheld the finding that Miller did not report for work for three months despite being ordered to do so and that the undisputed evidence conclusively showed that no one ever told Miller her transfer protest relieved her of working, we hold the Commissioner did not err. *See Cox v. Andrews Indep. Sch. Dist.*, Docket No. 092–R2–199, pp. 3–5 (Comm'r Educ.1999) (concluding good cause existed to terminate teacher's term contract when teacher intentionally skipped one day of school after her supervisor refused to grant her leave, when teacher "knew that termination was a real possibility"; teacher materially breached her contract because "showing up for work goes to the heart of the contractual agreement").

We overrule issues eight and nine.

We affirm the judgment.