# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00244-CV

**Ashley Robinson, Appellant**

**v.**

**Michael Williams (Successor in Office to Robert Scott), Commissioner of Education; and
Austin Independent School District, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-11-003763, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ashley Robinson appeals the trial court's judgment affirming the Commissioner of Education's decision upholding the termination of her term contract with the Austin Independent School District due to a financial exigency that required a reduction in the District's personnel. *See* Tex. Educ. Code § 21.211(a)(2). We will affirm.

### *Statutory Scheme to Contest Discharge*

To provide context for the factual and procedural background of this case, we briefly explain the statutory scheme available to Robinson to contest her discharge. Texas Education Code section 21.211(a)(2) provides that a board of trustees may terminate a term contract and discharge a teacher at any time in the event of "a financial exigency that requires a reduction in personnel." *Id.* When terminating a term contract, the board of trustees has the option of following the Texas

Education Code's hearing process. *Id.* § 21.251(b)(3). If the board elects to use the hearing process, a teacher notified that a recommendation to terminate his or her term contract has been made may request a hearing before an independent hearing examiner to protest the proposed termination. *Id.* § 21.253. This hearing is evidentiary and resembles a trial to the court. *Id.* §§ 21.255-.256(c), (e). The hearing examiner issues a written recommendation that contains fact findings and legal conclusions and may include a proposal for granting relief. *Id.* § 21.257(a). The board of trustees must then consider the examiner's recommendation at the first board meeting for which notice can properly be posted following issuance of the recommendation. *Id*. § 21.258(a). The meeting is non-evidentiary; the board considers the hearing examiner's recommendation and allows each party to present arguments to the board. *Id.* § 21.258(b); *see Miller v. Houston Indep. Sch. Dist.*, 51 S.W.3d 676, 680 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("At a non-evidentiary hearing, the board then considers the examiner's recommendation." (citing Tex. Educ. Code § 21.258(a), (b))). The board must render a decision that includes fact findings and legal conclusions and that may include a grant of relief. *Id.* § 21.259(a). The board may adopt, reject, or change the hearing examiner's legal conclusions or proposal for relief but must give a written reason and legal basis for each conclusion changed or rejected. *Id*. § 21.259(b). The board may reject or change the examiner's fact findings only if they are not supported by substantial evidence. *Id.* § 21.259(c). The board must give a written reason and legal basis for changing or rejecting any fact finding. *Id.* § 21.259(d).

The board's decision may be appealed to the Commissioner who, with certain exceptions not applicable here, must consider the appeal only on the record from the examiner's

2

and board's hearings. *Id.* § 21.301(c). If a board that terminated a teacher's term contract during the contract term accepted the hearing examiner's findings of fact without modification, the Commissioner may not substitute his judgment for that of the board unless the decision is arbitrary, capricious, or unlawful, or is not supported by substantial evidence. *Id.* § 21.303(b)(1). The Commissioner may not reverse a board's decision based on a procedural irregularity or error by either the hearing examiner or the board unless the Commissioner determines that the irregularity or error was likely to have led to an erroneous decision by the board. *Id.* § 21.303. The Commissioner's decision must include fact findings and legal conclusions, which may be adopted by reference from the local record. *Id.* § 21.304(a).

Either party may appeal the Commissioner's decision to the district court. *Id.* § 21.307(a). The court may not reverse the Commissioner's decision unless it was not supported by substantial evidence or unless the Commissioner's conclusions of law are erroneous. *Id.* § 21.307(f). The court may not reverse the decision based on a procedural irregularity by a hearing examiner, the board, or the Commissioner unless the court determines that the irregularity or error was likely to have led to an erroneous decision by the Commissioner. *Id.* § 21.307(g).

### *Factual and Procedural Background*

The District employed Robinson pursuant to a three-year term contract that was set to expire at the end of the 2011-2012 school year. Robinson was assigned to teach English at LBJ High School during the 2010-2011 school year. On February 28, 2011, the District's Board of

Trustees (the Board) voted to declare a district-wide "financial exigency"[1] and the need for a "program change"[2] and "reorganization."[3] The Board declared that the financial exigency required a reduction in force at most District campuses. Thereafter, the Board followed its policies related to identifying and approving the proposed campus "staffing patterns" submitted by school principals to achieve the reduction in force. The Board approved the recommendation that 1,153 positions throughout the District be eliminated, of which 568 were teaching positions. At LBJ, the principal recommended that four of the school's nine English teacher positions be eliminated. After the Board approved this recommendation, the District followed Board Policy DFF (Local) to identify which four individual teachers would be proposed for discharge or nonrenewal at LBJ. Robinson was one of the four teachers identified. The Board approved the District's recommendation and voted to propose the termination of Robinson's contract. Robinson was notified of the Board's action by letter on March 28, 2011. *See id.* § 21.211(a)(2) (board of trustees may terminate a term contract and discharge a teacher at any time for financial exigency that requires reduction in personnel).

Robinson requested a hearing to protest the proposed termination. The parties agreed on a hearing examiner, and the hearing was conducted on June 20 and 21, 2011. The hearing

---

[1] Board Policy DFF (Local) defines "financial exigency" as any event or occurrence that creates a need for the District to reduce financial expenditures for personnel including, but not limited to, a decline in the District's financial resources, a decline in enrollment, a cut in funding, a decline in tax revenues, or an unanticipated expense or capital need.

[2] Board Policy DFF (Local) defines "program change" as any elimination, curtailment, or reorganization of a curriculum offering, program, school operation, or department including a modification of staffing patterns on a particular campus or Districtwide.

[3] Board Policy DFF (Local) defines "reorganization" to include a change in, or elimination or closure of, a department or school, or consolidation of a function within a department or school.

4

examiner determined that: (1) a financial exigency existed on the date of the hearing; (2) the District complied with Board Policy DFF (Local) in identifying which employment positions would be eliminated at LBJ; and (3) the District complied with Board Policy DFF (Regulation) in proposing that Robinson be discharged. The hearing examiner's written recommendation, issued on July 25, included his conclusions that the District properly followed the reduction process, that the reduction criteria that identified Robinson as one of the "reduced" employees was fair, and that Robinson was properly considered for other positions in the District in compliance with Board Policy DFF (Local).

The Board conducted a meeting on August 1, 2011, for the purpose of "hear[ing] and consider[ing] arguments of the parties and the recommendation of the Independent Hearing Examiner." *See id.* § 21.258 (board of trustees must consider recommendation and record of hearing examiner at next board meeting for which notice can properly be posted). At the beginning of the hearing, Robinson's counsel requested that the Board consider information he asserted did not exist at the time of the June hearing before the hearing examiner. According to Robinson's counsel, the information demonstrated that (1) the District was no longer implementing a reduction in force but was, instead, increasing force in areas in which Robinson was certified to teach, and (2) the District did not follow its own policy requiring that it fill open teaching positions with internal candidates who had been identified as "reduced employees" during the course of the reduction in force rather than fill those positions with "external" candidates. The proffered evidence consisted of Robinson's affidavit, to which was attached as exhibits screen shots of various job postings on the District's website during June and July, 2011.

The District opposed counsel's request that the Board consider the proffered evidence, and the Board voted to deny it. The Board then heard the arguments of counsel for Robinson and for the District and deliberated the matter in closed session. Thereafter, in open session, one Board member moved to adopt the hearing examiner's proposed findings of fact and conclusions of law and recommendation that Robinson's contract be terminated. The motion was seconded and passed by unanimous vote of the seven Board members present at the meeting.

Robinson then appealed the Board's decision by filing a petition for review with the Commissioner of Education. *See id.* § 21.301(a). Robinson identified the following three issues on appeal:

• The Board failed to follow its established procedure that required it to offer Robinson a teaching position open as of June 30, 2011, for which she was certified and to which she applied. Instead, the Board kept those positions open and made them available to "external" applicants.

• The Board's decision to terminate Robinson's employment violated Texas Education Code section 21.211 because, at the time of the August 1, 2011 Board meeting, there did not exist a "financial exigency that require[d] a reduction in personnel."

• The Board erroneously denied her motion to consider proffered evidence and information that was relevant to the Board's decision whether to adopt the hearing examiner's recommendation that Robinson's contract be terminated.

In response, the District maintained that it followed its policies and procedures which required that it consider Robinson for any open position for which she was qualified up to the date of the evidentiary hearing before the hearing examiner (June 20-21, 2011). The District took the position that after the date of the evidentiary hearing, it was no longer required to consider only "internal"

candidates for open positions in the District. The District also asserted that the reduction in force was properly done pursuant to the existence of a financial exigency that required it to significantly reduce personnel, and that the Board correctly denied Robinson's motion to consider information relating to circumstances existing after the date the hearing examiner made his recommendation that Robinson's contract be terminated. According to the District, the meeting before the Board was not an evidentiary hearing and the Board's review was confined to considering the hearing examiner's findings of fact and conclusions of law and recommendation, which were based on evidence presented at the June 20-21 evidentiary hearing.

In October 2011, the Commissioner of Education issued his decision. *See id.* § 21.304 (Commissioner's decision must be in writing and must include findings of fact and conclusions of law). With respect to Robinson's first issue, the Commissioner concluded that the District was only required to give Robinson preference over external applicants for open positions in the District for which she was qualified and for which she applied up until the date of the hearing before the hearing examiner. The Commissioner also noted that both Robinson and the District agreed that any open positions for which Robinson applied and was qualified could have been offered to other teachers affected by the reduction in force if they were the more qualified applicants. The Commissioner stated that nothing in the record indicated that Robinson was not considered for those positions or was more qualified than other teachers affected by the reduction in force who applied for them. The Commissioner also concluded that a financial exigency had required a reduction in personnel employed by the District. The Commissioner found that Robinson was one of many teachers who lost their jobs due to the need to eliminate over 500 teaching positions and who were not rehired due to the limited number of teaching positions that became available after the reduction in force was

7

implemented. Finally, the Commissioner concluded that the Board was not authorized to consider additional evidence at its meeting, but was limited to examining the local record before the hearing examiner in its review of his findings of fact and conclusions of law and recommendation to terminate Robinson's contract.

Robinson then filed a suit for judicial review of the Commissioner's decision in Travis County district court. *See id.* § 21.307(a) (either party may appeal commissioner's decision to district court). Robinson requested that the district court reverse the Commissioner's decision to uphold the Board's action terminating her contract and to render judgment that the Board's action terminating her contract was null and void and of no force and effect. After considering the administrative record, briefs, and arguments of counsel, the district court concluded that the Commissioner's decision was supported by substantial evidence and affirmed the decision. Robinson then perfected this appeal.

### *Standard of Review*

In this appeal we are asked to review a decision of the Commissioner of Education. *See id*. "A court can reverse the commissioner's decision on a teacher's contract if the decision is not supported by substantial evidence or if the commissioner's conclusions of law are erroneous." *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000); *see also* Tex. Educ. Code § 21.307(f). Robinson had the burden to demonstrate that the Commissioner's decision was not supported by substantial evidence. *Miller*, 51 S.W.3d at 680. Substantial evidence supports a decision if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the Commissioner must have reached to justify the disputed action. *Id.*; *see also*

8

*Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988). Thus, to uphold the Commissioner's decision, we must merely find that reasonable minds could have reached the same conclusion as the Commissioner. *Miller*, 51 S.W.3d at 680. "The Commissioner's reasoning for his decision is immaterial if his conclusion is correct." *Id.* (citing *Texas Emp't Comm'n v. Hays*, 360 S.W.2d 525, 527 (Tex. 1962)).

When the Commissioner, in his conclusions of law, is called upon to construe a statute for which the Texas Education Agency is charged with enforcement, we must give serious consideration to that construction, "so long as the construction is reasonable and does not contradict the plain language of the statute." *Id.* at 680-81 (citing *Dodd v. Meno*, 870 S.W.2d 4, 7 (Tex. 1994)). Although the Texas Education Code's employment provisions are remedial and should be construed broadly, "we are not inclined to reverse the Commissioner's reasonable determination in an area where he possesses considerable authority and expertise." *Id.* (quoting *Dodd*, 870 S.W.2d at 7).

### *Did the Board Have the Authority to Terminate Robinson's Term Contract?*

In her first issue, Robinson asserts that the financial exigency the District faced did not "require" that the Board terminate her contract on August 1, 2011, and, as a consequence, the Board's decision was not authorized by Texas Education Code section 21.211(a)(2). Section 21.211(a) provides:

> The board of trustees may terminate a term contract and discharge a teacher at any time for:
>
> > (1) good cause as determined by the board; or
>
> > (2) a financial exigency that requires a reduction in force.

Tex. Educ. Code § 21.211(a). Robinson frames her appellate issue as "whether the financial exigency in the present case 'required' the board of trustees to terminate Ms. Robinson's employment on August 1, 2011, with a full year remaining in her contract." In essence, Robinson rewrites the statute to provide that her contract can be terminated only if a financial exigency requires that *her particular contract* be terminated, rather than that the District reduce its overall force. We disagree with Robinson's reading of this statute. Texas Education Code section 21.211(a)(2) plainly provides that "the board of trustees may terminate a term contract and discharge a teacher at any time for . . . a financial exigency that requires a *reduction in personnel*." *Id.* § 21.211(a)(2) (emphasis added). The statute's purpose is to identify the limited circumstances in which the Board may terminate a term contract. One of those circumstances is when a financial exigency requires a reduction in a district's workforce. The question then, was whether a financial exigency required a reduction in the District's personnel—i.e., its total workforce—not whether the financial exigency required terminating Robinson's contract as opposed to taking some other cost-cutting measure, such as terminating a different teacher's contract. The Board determined that a financial exigency requiring a reduction in force did exist and the record contains substantial evidence supporting this finding. There was evidence that the District faced a $94 million budget shortfall due to an expected $79 million cut from its budget by the State, the expiration of federal stimulus funds, the unavailability of state grants, and a 3.4% decline in local tax collections. There was also evidence that the District spends 87% of its budget on personnel, which supports the finding that a reduction in force was necessary to address the budget shortfall.

The existence of a financial exigency requiring a reduction in personnel meant that the board was statutorily permitted to do what it otherwise could not—terminate term contracts identified in compliance with Board Policy DFF (Local). *Id.* The District followed its policy by first identifying the "employment areas" that would be reduced. One of those employment areas was English teaching positions at LBJ, which would be reduced from nine to five. The Board approved this as one aspect of its total reduction in force. The District then identified which of the nine teachers would be terminated in order to accomplish the approved reduction in the number of English teaching positions at LBJ. Robinson was identified as one of the four teachers to propose for discharge. Robinson's discharge was part of a reduction in the District's total workforce by 1,153 positions, 568 of which were teachers.

Whether the Board was authorized to terminate Robinson's contract depended on whether it complied with its policies once the financial exigency dictated a reduction in force, including whether it properly identified employment areas to be reduced and, ultimately, which individuals would be discharged in order to effectuate that reduction. The hearing examiner's recommendation includes extensive analysis of the entire process as well as findings of fact and conclusions of law, which the Board adopted. The Board concluded that the District followed its policies and adopted the hearing examiner's findings and conclusions. Robinson does not challenge those findings or conclusions. Rather, she asserts that the Board was not "required" to terminate her contract on August 1, 2011, because, according to its own job website postings, the District had open teaching positions, including an English teacher position at LBJ, that it could have offered her in lieu of termination. According to Robinson, as of August 1, 2011, the District was actually

11

increasing its force and that "[f]iring her and hiring someone else would not accomplish the goal of a reduction in force." This assertion ignores the substantial evidence in the record that the District *did* reduce its force by 1,153 positions, 568 of which were teaching positions. Evidence that there were open positions in the reduced workforce that were offered to other "reduced" teachers, or evidence that some positions were added to the reduced workforce, does not necessarily mean that the overall workforce was not reduced. The evidence in the record is that 568 teachers were included in the "reduced employees," 202 of those teachers were returned to employment, 112 resigned, and 254 had not been returned to employment. Those numbers alone indicate a net reduction of 366 teaching positions.

Robinson argues that if the District had open teaching positions on August 1, 2011, for which she was qualified, termination of her contract was not "required." Again, Robinson misapprehends what must be "required" in order to terminate her contract in compliance with section 21.211(a)(2). What must be "required" is a reduction in personnel in the District, not the termination of an individual contract. The evidence in the record supports the Board's finding that the financial exigency the District faced required that it significantly reduce its force, which it did.

The facts of this case are distinguishable from the Commissioner's 1983 decision in *Strauch v. Aquilla Independent School District*, No. 189-R1-782 (Comm'r Educ. 1983), on which Robinson chiefly relies. In *Strauch*, the district employed a total of seven teachers and needed to reduce its teaching staff by one teacher. After the district proposed terminating Strauch's contract, three employees resigned and, as a consequence, the required reduction in force was accomplished by attrition and there were more open positions than reduced employees. Under those circumstances,

12

the Commissioner determined that the district did not need to terminate the one teacher's contract. In the present case, however, the number of reduced teachers exceeded the number of positions that became available due to attrition. Robinson was in the same position as the other reduced teachers and reassigning her to one of the open teaching positions for which they were all competing, rather than terminating her contract and then considering her for rehire along with the others, would have given her preferential treatment to which she was not entitled. We overrule Robinson's first issue.

### The Board's Denial of Robinson's Motion to Consider Evidence

In her second issue, Robinson contends that the Board erroneously refused to consider the evidence and information she proffered at the Board meeting. According to Robinson, the Board's refusal to consider this evidence rendered its decision arbitrary and capricious, and the Commissioner should therefore have reversed it. Robinson maintains that the Board should have considered the evidence because it came into existence after the hearing before the hearing examiner and was material to the Board's decision regarding termination of her contract. Robinson contends that the Board's refusal to consider the proffered evidence caused its decision to be "based on bad facts—as in incomplete facts." The Commissioner concluded that the Board was not permitted to consider additional evidence during its meeting because the meeting was not an evidentiary hearing and the Board's consideration of the hearing examiner's recommendation was confined to the facts and circumstances as they existed at the time the recommendation was made.

In her brief, Robinson advances several arguments in support of her position that the Board acted arbitrarily and capriciously by not considering her proffered evidence. Robinson's arguments conceptually reduce to her views that (1) because the evidence was new and she could

13

not have presented it to the hearing examiner, it should have been made part of the record in the Board's hearing, and (2) regardless of whether the Board could entertain new evidence, the information she presented was of a type that the Board should have officially noticed and taken into account in making its decision, rather than ignored. Consequently, Robinson argues that this Court should reverse the Commissioner's decision because the Board erred procedurally by declining to consider the proffered evidence.

Robinson's arguments essentially challenge the Commissioner's conclusion of law number 4, which states:

> A school board lacks the authority to take new evidence concerning the termination of a contract when it considers the recommendation of an independent hearing examiner. Tex. Educ. Code § 21.258.

Section 21.258(b) provides that, at the Board meeting to consider the hearing examiner's recommendation, the board "shall consider the hearing examiner's recommendation and shall allow each party to present an oral argument." Tex. Educ. Code § 21.258(b). Section 21.259(c) provides that the board may "reject or change a finding of fact made by the hearing examiner only after reviewing the record of the proceedings before the hearing examiner and only if the finding of fact is not supported by substantial evidence." *Id.* § 21.259(c). Read together, these two provisions indicate that the legislature did not intend for the Board meeting to include an evidentiary hearing. First, section 21.258 states that the parties may present arguments at the Board meeting, but is silent with respect to the presentation of additional evidence. In contrast section 21.256, which governs the conduct of the hearing before the hearing examiner, expressly states that the parties may

14

present evidence and that the Texas Rules of Evidence apply. *Compare id.* § 21.258(b) *with id.* § 21.256(c)(4), (d). Second, section 21.259 provides that the Board may only change or reject a finding of fact if the record of the proceedings before the hearing examiner does not include evidence to support it. The Board's review of any evidentiary findings is thus confined by statute to a consideration of the contents of the record of proceedings before the hearing examiner, not additional evidence presented to it. The Commissioner's legal conclusion that the Board did not have the authority to admit new evidence was not erroneous. *See Montgomery Indep. Sch. Dist.*, 34 S.W.3d at 560 (noting that Board meeting is "non-evidentiary" and holding that Board not authorized to make additional findings of fact when reviewing hearing examiner's recommendation).

In her brief to this Court, Robinson argues that the Commissioner's conclusion was incorrect because the Board was not asked to consider "evidence," but rather was asked to take official notice of the contents of its own website, which she contends showed that the Board (1) was hiring English teachers in August 1, 2011, when it was deciding whether to terminate Robinson's contract and was therefore not reducing its force, and (2) was not following its own policies and procedures governing its obligation to offer Robinson a teaching position rather than terminate her contract. As we have already explained, the mere fact that the District had open teaching positions it was seeking to fill does not establish that it had not reduced its workforce and, as previously noted, there is evidence in the record that there were many more teachers affected by the reduction in force than open positions available for them to be rehired. Thus, the Board's failure to consider evidence that the District was filling open positions at the time it voted to adopt the hearing examiners recommendation to terminate Robinson's contract, even if error, did not cause the Board to come

15

to an erroneous decision, and the Commissioner would not have been permitted to reverse the decision on that basis. *See* Tex. Educ. Code § 21.303(c) ("The commissioner may not reverse a decision of a board of trustees based on a procedural irregularity or error by a hearing examiner, the board of trustees, or a board subcommittee unless the commissioner determines that the irregularity or error was likely to have led to an erroneous decision by the board or board subcommittee.").

Robinson also contends that, as a matter of fundamental fairness and due process, the Board should have taken into account her proffered evidence of facts that did not arise until after the close of evidence before the hearing examiner. But the evidence Robinson sought to present does not, as she argues, demonstrate that the Board was not actually reducing its force but merely replacing Robinson with a different person. The Commissioner reached the same conclusion stating:

> But assuming solely for the purposes of argument that Petitioners' Offer of Proof before the school board can be considered, the argument will be examined. Petitioners admit that prior to June 30, 2011 it is possible that all open positions could have been offered to other teachers affected by the reduction in force. Nothing in the record suggests that this was not the case. Based on Petitioners' correct interpretation of Respondent's policy, hiring back other teachers affected by the reduction in force would not violate the policy. Five hundred sixty-eight teachers were subject to the reduction in force. Of these, 475 teachers wished to be considered for rehire. Respondents hired back 202 of these teachers by June 9, 2011. One reason why Petitioners were not among the teachers rehired might be that they were both on growth plans and had appraisal scores that were low compared to other teachers. Respondent was making an effort to rehire teachers affected by the reduction in force, but even so, many teachers were not rehired.

If, as Robinson seems to assert, the District were simply "swapping" her for a different person and there had been no reduction in the workforce, Robinson's argument might be more compelling. But the evidence in the record shows that the District's workforce was significantly reduced, which

16

affected many teachers, and that the District was able to rehire many, though not all, of those teachers into positions made vacant by resignations or retirements.

Nor does the proffered information establish that the District violated its own policies regarding rehiring "reduced" teachers such that, had the Board considered it, the information would have caused the Board to reject the recommendation to terminate Robinson's contract. Board Policy DFF (Local) provides:

> [O]nce the Superintendent has identified the appropriate employees in the affected area(s), those employees may, up until the date of a hearing requested . . . apply for available positions for which they are qualified. . . . Up until the date of a hearing requested in accordance with this policy, an employee who applies for an open position must be offered the position if the employee meets the District's objective criteria for that position and is the most qualified internal applicant for that position.

The policy prohibits the District from hiring an "external" candidate for a position to which a teacher affected by a reduction in force has applied and for which he or she is qualified "up until the date of a hearing requested in accordance with this policy." The Board interpreted this policy to require that preference be given to internal candidates up to the date of the hearing before the hearing examiner and, as a consequence, concluded that Robinson's proffered information, which related to events after that hearing, was irrelevant to whether the District properly followed its policy with regard to internal versus external job applicants. Robinson countered that the "hearing" referenced in the policy is the hearing before the Board and, consequently, the proffered information was relevant and the Board should have considered it.

The Commissioner agreed with the Board's interpretation and concluded that the District's Policy DFF (Local) "only required it to consider a teacher proposed for termination as part

17

of the reduction in force for open positions up until the date of the evidentiary hearing before the independent hearing examiner." According to the Commissioner, the "hearing" referenced in the policy is not the Board meeting, but the evidentiary hearing before the hearing examiner. We agree with the Commissioner's interpretation of this policy. The "hearing" that a teacher may request is a hearing before a hearing examiner. *See id.* § 21.253. Once the hearing examiner has issued his written recommendation the Board, without any request, is required to consider the hearing examiner's recommendation at a meeting. The Board meeting is not a "requested" hearing, but a mandatory one. *See id.* § 21.258(a) ("The board of trustees . . . shall consider the recommendation and record of the hearing examiner at the first board meeting for which notice can be posted in compliance with Chapter 551, Government Code, following the issuance of the recommendation.") Moreover, even assuming Robinson's interpretation of Board Policy DFF (Local) were correct, her proffered evidence does not show that the District hired "external" candidates for positions to which Robinson applied and for which she was qualified at any time before the August 1, 2011 hearing. Nor does it show that less qualified internal applicants than Robinson were offered jobs for which she applied in June or July 2011. The most the proffered evidence shows is that the District posted open teaching positions on its website. Even assuming that the District received and accepted applications from "external" candidates for these positions, of which there is no evidence, there is also no evidence that the District either hired external candidates for these positions or that there were more open positions than could be filled by internal applicants more qualified than Robinson. We overrule Robinson's second issue.

18

## CONCLUSION

Having overruled Robinson's two appellate issues, we affirm the trial court's judgment affirming the decision of the Commissioner.

_____

David Puryear, Justice

Before Chief Justice Rose, Justices Puryear and Goodwin

Affirmed

Filed:   June 11, 2015